1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

12

PAULETTE M. ESTES, on behalf of
herself and her marital community,

              Plaintiff,

v.

WELLS FARGO HOME MORTGAGE;
FEDERAL NATIONAL MORTGAGE
ASSOCIATION; and NORTHWEST
TRUSTEE, INC.,

              Defendants.

CASE NO. C14-5234 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S
MOTION TO CONTINUE

13

14

15

16

17

18

19

20

        This matter comes before the Court on Defendants Wells Fargo Bank, N.A.[1]

("Wells Fargo") and Federal National Mortgage Association's ("Fannie Mae")

(collectively, "Defendants") Fed. R. Civ. P. 12(b)(6) and/or 56(a) motion for an order

dismissing claims with prejudice and/or granting summary judgment (Dkt. 13); and on

Plaintiff Paulette M. Estes's ("Estes") motion to continue Defendants' motion for

summary judgment (Dkt. 16). The Court has considered the pleadings filed in support of

and in opposition to the motions and the remainder of the file and hereby rules as follows:

21

22

        [1] Defendants state that Estes "incorrectly named Wells Fargo Home Mortgage as a
defendant. Wells Fargo Home Mortgage is merely a division of Wells Fargo Bank, N.A. It is not
a separate legal entity." Dkt. 13 at 1, n. 1.

# I.  PROCEDURAL HISTORY

On March 19, 2014, a notice of removal was filed in this matter. Dkt. 1. Attached to that notice was Estes's complaint, filed in Clark County Superior Court. Dkt. 1-1 at 4-18 ("Comp"). Estes alleges (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) violation of Washington's Consumer Protection Act ("WCPA"), (4) misrepresentation, (5) intentional infliction of emotional distress, and (6) promissory estoppel. *Id.*

On May 5, 2014, Defendants filed the instant motion seeking dismissal of all Estes's claims. Dkt. 13. On May 29, 2014, Estes filed a motion to continue Defendants' motion for summary judgment. Dkt. 16. On May 30, 2014, Estes filed a brief in opposition to Defendants' motion. Dkt. 18. On June 4, 2014, Defendants filed a brief in opposition to Estes's motion to continue the motion for summary judgment. Dkt. 19. On June 5, 2014, Estes filed a reply to Defendants' brief in opposition to their motion to continue. Dkt. 20. On June 6, 2014, Defendants filed a reply to Estes's opposition to their motion seeking dismissal of their claims. Dkt. 21.

# II.  BACKGROUND

In 2002, Estes and her husband obtained a home loan, secured by a deed of trust on the property. Dkt. 1-1 at ¶ 4.2. Soon after the home loan's inception, Fannie Mae became the owner of the loan and Wells Fargo began servicing the loan. *Id.* ¶¶ 4.3, 4.4.

In December 2008, Estes contacted Wells Fargo to discuss options for lowering her mortgage payment. *Id.* ¶¶ 4.10. Over the next few months, Estes alleges that she sent the requested financial information to Wells Fargo to be considered for a loan

1    modification. *Id.* ¶ 4.9.  According to Estes, she received a September 22, 2009 letter

2    from Wells Fargo, which stated:

3
> Based on our recent conversation about your current mortgage payment
> issues, we've gone back and carefully reviewed your situation and the

4
> information you provided.  That's why we're writing you today – to let you
> know the results of our review.  You may be eligible for a trial modification

5
> plan under the government's Home Affordable Modification Program, and
> we estimate your new payment amount to be $1,167.

6
7    *Id.* ¶ 4.10.  Estes states that the letter explained step-by-step how to proceed with the

   modification process:

8
9
> (1) You must call us to finalize this offer by October 6, 2009 so that we can
> establish your trial modification plan; (2) During the phone call, we'll
> schedule a date for your first trial payment using our free Wells Fargo Easy

10
> Pay automatic payment service . . . . (3) You will need to make two
> additional payments at your modified amount using Wells Fargo Easy Pay

11
> over the following sixty days; (4) Within a week of setting up your trial
> payments, we will send you a package of information that clearly spells out

12
> the full terms and documentation you need to supply.

13
14    *Id.* ¶ 4.11. The letter closed with the following statement:

15
> Don't let this opportunity to lower your monthly mortgage payments
> through the Home Affordable Modification Program pass you by. Call us
> right away to schedule your required trial period payment, and you are in

16
> the program. It's that easy.

17    *Id.* ¶ 4.12.

18        Estes alleges that she never received the promised packet of information that

19    clearly spells out the full terms and documents she would need to supply.  *Id.* ¶ 4.13.

20    Estes further alleges that on October 2, 2009, she scheduled her three trial payments with

21    Wells Fargo to be made on October 10, November 10 and December 10, 2009. *Id.* ¶ 4.14.

22    According to Estes, during a call with Wells Fargo representative, Monica, the bank

1  requested no further documentation from Estes.  *Id.* Before accepting the trial

2  modification offer, Estes alleges that she was current on her mortgage with the unpaid

3  principal balance at approximately $283,360.20.  *Id.* ¶ 4.15.

4      According to Estes, after she made the first payment on the trial plan, she received

5  a letter stating she and her husband were in default on their mortgage.  *Id.* ¶ 4.16. Estes

6  alleges that she called and spoke to a Wells Fargo representative, Melissa, who explained

7  that Estes was technically late on her loan payment per the original note; however,

8  Melissa also indicated Estes was in the home loan modification program and working

9  under a different payment plan. *Id.* Melissa instructed Estes to continue to make the trial

10  payments.  *Id.*  No further documents were requested from Estes at that time. *Id.*  Estes

11  alleges that she continued to make monthly trial payments at the modified rate for fifty

12  (50) months. *Id.* ¶ 4.17.

13      Estes alleges that she continued to call Wells Fargo to check on the status of her

14  modification. She alleges that on January 6, 2010, she contacted Wells Fargo and was

15  instructed by them to send updated financial information by fax; she did so that same day.

16  *Id.*  ¶ 4.18.  On March 14, 2010, Estes alleges that she received a letter from the bank

17  stating:

18      Unfortunately, after carefully reviewing the information you've provided,
        we are unable to adjust the terms of your mortgage.  We can only process
19      your request for payment assistance if we have additional information
        from you.  We have been unable to reach you to discuss your situation.
20      For that reason, you have not been approved for assistance with your
        current payment challenges.
21

22

*Id.* ¶ 4.19.  On March 11, 2010, Estes alleges that she phoned Wells Fargo and spoke with a representative, Diane, who instructed her to re-fax all her financial documents, which Estes did that same day. *Id.* ¶ 4.20. According to Estes, on March 17, 2010, she received a loan modification starter kit sent by mail from Wells Fargo, which contained forms that she completed, including updates regarding her financial information. *Id.* ¶ 4.21. Estes alleges she sent her completed application on April 3, 2010. *Id.*

On August 13, 2010, Estes alleges that she received a letter which stated:

> Unfortunately, after carefully reviewing the information you've provided, we are unable to adjust the terms of your mortgage.  You have not been approved for a mortgage loan modification because we were unable to get you a modified payment amount that you could afford per the investor guidelines on your mortgage.

*Id.* ¶ 4.22.  According to Estes, throughout 2010 and 2011, she continued to submit documentation to the bank in an attempt to have her loan permanently modified.  *Id.* ¶ 4.23.  However, in early 2011, Estes alleges that she received a notice of default from Northwest. *Id.*  Nonetheless, she continued to make payments to Wells Fargo at the modified trial payment amount.  *Id*. Estes alleges that Wells Fargo returned her January, February and March 2011 payments, although it accepted subsequent payments. *Id.*

Additionally, in early 2011, Estes further alleges that she filed a complaint with the Office of the Comptroller of the Currency regarding another attempt to have Wells Fargo permanently modify her loan. *Id*. ¶ 4.24. Estes alleges she was connected to Ms. Kelly Crippen ("Crippen") at Wells Fargo, who promised that if Estes eliminated the $465.00 payment for her handicapped accessible van, the bank would offer her a loan modification.  *Id.*  Estes alleges she spoke with her siblings about taking over payments

on the van.  *Id.*  According to Estes, Crippen instructed her to fax over documentation

that the van payments would be paid by her siblings; she did so in June 2011.  *Id.*  In July

2011, another Wells Fargo representative phoned Estes to inform her that eliminating the

van payments from her monthly expenses would not fix the problem, and the bank would

not modify her loan.  *Id.*

Estes alleges that she received a letter from Wells Fargo dated October 30, 2012

again denying her request for mortgage assistance.  *Id.* ¶ 4.25. According to Estes, the

letter stated:

> We carefully reviewed the information you provided and explored a
> number of mortgage assistance options.  At this time, we have determined
> that you do not meet the investor requirements of the program because:
> You have exceeded the number of modifications allowed by the investor.

*Id.*

On or about June 24, 2013, Estes received a notice of default from

Northwest, indicating a past due amount of $73,935.69.  *Id.*  ¶ 4.26.  According to

Estes, she made the modified payment on her loan since October 2009 with the

only exception being her withholding of a November 2012 payment at the

instruction of a "HUD housing counselor" following an unsuccessful foreclosure

mediation with Wells Fargo. *Id.* In October 2013, Wells Fargo returned Estes's

$1,167 trial payment.  *Id.*

III.    DISCUSSION

**A.    Motion to Dismiss Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.    Breach of Contract**

A contract requires offer, acceptance and consideration. *See Yakima County Fire Protection Dist. No. 12 (West Valley) v. Yakima*, 122 Wn.2d 371, 389–90 (1993). A breach of contract is actionable if "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995). In the special context of a TPP under HAMP, where "borrowers allege . . . that they have fulfilled all of their obligations

1  under the TPP, and the loan servicer has failed to offer a permanent modification, the

2  borrowers have valid claims for breach of the TPP agreement." *Corvello v. Wells Fargo*

3  *Bank, NA*, 728 F.3d 878, 884 (9th Cir. 2013). "If a borrower does not qualify for the

4  HAMP program, the servicer must not only alert the borrower, but must consider

5  alternatives." *Id.* at 881.

6         In this case, Estes argues that there was a valid enforceable contract between her

7  and Wells Fargo. The Court agrees to the extent that Wells Fargo was required to notify

8  Estes whether she qualified for a permanent modification and, if Estes did not qualify, to

9  consider alternatives. Estes alleges in the complaint that Wells Fargo not only notified

10 Estes that she did not qualify but also that Wells Fargo considered alternatives. ¶ 4.25.

11 However, what is unclear from the complaint is whether Estes fulfilled her obligations

12 under the TPP and whether Wells Fargo improperly denied Estes a permanent

13 modification. There are conflicting factual allegations regarding oral promises that Estes

14 would qualify under certain circumstances and that Estes failed to qualify under all

15 circumstances. Therefore, the complaint fails to allege an essential fact underlying

16 Estes's claims for breach of contract and Defendants' motion is granted on this issue.

17 The Court also grants Estes leave to amend because it is not clear at this point that any

18 amendment is futile.

19        With respect to the statute of limitations, the statute begins to run at the time of the

20 alleged breach. *North Coast v. Factoria Partnership*, 94 Wn. App. 855, 859 (1999)

21 ("Our courts have consistently held that the statute of limitations in a contract action

22 begins to run when the contract is breached."). There exists a plausible theory that the

1  statute began to run when Wells Fargo finally denied Estes a loan modification in the

2  letter dated October 30, 2012.  Comp. ¶ 4.25.  Therefore, Estes timely filed her claim and

3  amendment would not be futile.

4        With regard to Estes's argument that the TPP and subsequent performance created

5  a binding loan modification, this claim fails as a matter of law.  Under no plausible theory

6  of law can the TPP, alleged oral promises, and/or temporary performance completely and

7  finally alter the terms of a 30-year note secured by real property.  Therefore, the Court

8  finds that this claim fails as a matter of law and is dismissed with prejudice.

9  **C.**     **Good Faith and Fair Dealing**

10       "An implied covenant of good faith inheres in every contract."  *Edmonson v.*

11 *Popchoi*, 172 Wn.2d 272, 280 (2011). The duty of good faith requires "faithfulness to an

12 agreed common purpose and consistency with the justified expectations of the other

13 party."  *Id.* (citing Restatement (Second) of Contracts § 205 cmt. a (1981)).

14       In this case, Estes admits that her complaint is insufficient to support this claim.

15 At this point, it is unclear whether Wells Fargo breached the implied covenant of good

16 faith with regard to the TPP agreement.  Estes could plausibly allege facts that, over the

17 course of the three-year ordeal, would support a claim that Wells Fargo failed to operate

18 with faithfulness to an agreed common purpose or consistent with the justified

19 expectations of Estes.  Therefore, the Court grants Defendants' motion on this issue and

20 grants Estes leave to amend this claim.

21

22

**D.     CPA**

In order to support a claim for violation of the CPA, a plaintiff must allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the Plaintiff's business or property; and (5) the injury is causally linked to the unfair or deceptive act or practice.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).  An unfair or deceptive practice is one that "has the capacity to deceive a substantial portion of the public."  *Id*. at 785.  Failure to satisfy even one element is fatal to a CPA claim.  *Id*. at 793.

In this case, Defendants argue that Estes has failed to allege facts to support the first and third elements of a CPA claim.  Dkt. 13 at 14–15.  The Court agrees with Defendants.  However, the Court is not persuaded that any amendment would be futile.  Estes does allege that Wells Fargo is working with thousands of Washington residents on loan modifications.  Estes argues that it is likely that other residents have been lured into the prospect of temporary loan modifications only to be later rejected for the program and served with subsequent notices that they are severely behind and in default of the original mortgages.  Dkt. 18 at 15–16.  Such allegation would seem to state a valid CPA claim.  Therefore, the Court grants Defendants' motion on this claim and grants Estes leave to file an amended complaint.

**E.     Negligent Misrepresentation**

The tort of negligent misrepresentation occurs when the defendant, in the course of business, profession, employment, or a transaction in which the defendant has a

1   pecuniary interest, negligently supplies false information for the guidance of others in

2   their business transactions, and the plaintiff justifiably relies on such information to his

3   detriment. *Austin v. Ettl*, 171 Wn. App. 82, 88 (2012).

4       In this case, Defendants argue that Estes has failed to allege that Wells Fargo

5   provided her with false information, that she justifiably relied on such information, or

6   that she suffered pecuniary loss.  Dkt. 13 at 16–17.  The Court agrees that Estes has failed

7   to adequately plead this claim.  Moreover, Estes's primary allegations rely on Wells

8   Fargo's promised future conduct.  Comp. ¶¶ 5.23–5.25.  While failure to act in

9   accordance with a promise is sufficient to establish a breach of contract claim, it is not

10  sufficient to establish a negligent misrepresentation claim because Wells Fargo must

11  make a "false representation as to a presently existing fact . . . ."  *Havens v. C & D*

12  *Plastics, Inc.*, 124 Wn.2d 158, 182 (1994).  Although it seems likely any amendment

13  would be futile as to all elements of this claim, the Court is unable to reach that

14  conclusion at this time.  Therefore, the Court grants Defendants' motion on this claim and

15  grants Estes leave to amend.

16  **F.    Infliction of Emotional Distress**

17      The elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2)

18  intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff

19  of severe emotional distress."  *Kirby v. City of Tacoma*, 124 Wn. App. 454, 473 (2004).

20      In this case, Defendants argue that Estes has failed to allege any extreme or

21  outrageous conduct.  Dkt. 13 at 17–18.  The Court agrees that no allegation in the

22  complaint rises to the level of conduct that goes "beyond all possible bounds of decency,

1   and [could] be regarded as atrocious, and utterly intolerable in a civilized community."

2   *Strong v. Terrell*, 147 Wn. App. 376, 385 (2008).  The Court, however, is unable to

3   conclude that any amendment would be futile.  Therefore, the Court grants Defendants'

4   motion on this issue and grants Estes leave to amend.

5   **G.      Promisory Estoppel**

6          Promissory estoppel requires: "(1) A promise which (2) the promisor should

7   reasonably expect to cause the promisee to change his position and (3) which does cause

8   the promisee to change his position (4) justifiably relying upon the promise, in such a

9   manner that (5) injustice can be avoided only by enforcement of the promise."  *Corbit v.*

10  *J.I. Case Co.*, 70 Wn.2d 522, 539 (1967).

11         In this case, Defendants argue that Estes fails to allege any clear promise.  Dkt. 13

12  at 18.  Estes counters that Wells Fargo promised to permanently modify her loan if Estes

13  completed certain acts and Wells Fargo promised to modify her loan if she eliminated a

14  certain amount of expenses.  Dkt. 18 at 19.  To the extent that Defendants only challenge

15  these two statements, the Court denies Defendants' motion.  The allegation that the Wells

16  Fargo representative promised that Estes would qualify for a loan if she eliminated the

17  disability van payment is a sufficient allegation to support the promise element of Estes's

18  claim.

19  **H.      Fannie Mae**

20         Defendants argue that Estes makes no claims against the owner of the loan, Fannie

21  Mae, so its claims against that entity should be dismissed.  Dkt. 13 at 6.  Although Estes

22  counters with a theory under which Fannie Mae may be liable, Estes fails to provide

1   sufficient factual allegations in her complaint to support the theory of vicarious liability.

2   Therefore, the Court grants Defendants' motion on this issue.  Estes, however, may have

3   leave to amend to include such allegations because Defendants fail to show that any such

4   amendment would be futile.

5   **I.    Summary Judgment**

6          In light of the fact that the Court has granted Estes leave to amend her complaint,

7   summary judgment is premature.  Therefore, the Court denies Defendants' summary

8   judgment motion and denies Estes's motion to continue as moot.

9                                    **IV.    ORDER**

10         Therefore, it is hereby **ORDERED** that Defendants' Fed. R. Civ. P. 12(b)(6)

11  and/or 56(a) motion for an order dismissing claims with prejudice and/or granting

12  summary judgment (Dkt. 13) is **GRANTED in part** and **DENIED in part** as set forth

13  herein and Estes's motion to continue Defendants' motion for summary judgment (Dkt.

14  16) is **DENIED is moot**.

15         Dated this 20th day of August, 2014.

16

17  _____

18  BENJAMIN H. SETTLE
    United States District Judge

19

20

21

22

ORDER - 13