**The Honorable Benjamin H. Settle**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Paulette M. Estes, on behalf of herself and her marital community,<br><br>                    Plaintiff,<br><br>     v.<br><br>Wells Fargo Home Mortgage;<br>Federal National Mortgage Association; and<br>Northwest Trustee Services, Inc.<br><br>                    Defendants. | **Case No.: 3:14-cv-05234-BHS**<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Paulette M. Estes, by and through her attorney, Nathan A. Quigley and Northwest Consumer Law Center, brings this action and alleges as follows:

**I. PARTIES**

1.1.  Plaintiff Paulette M. Estes is a resident of Clark County, Washington and owns and resides in real property located at 18707 NE 229th Court, Brush Prairie, WA 98606.  This real property is legally described as: LOT 4, RASPBERRY RIDGE, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME "J" OF PLATS, PAGE 515, RECORDS OF CLARK COUNTY, WASHINGTON.  Plaintiff shared this real property with her husband,

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 1



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

Edwin J. ("E.J.") Estes, until his death in May 2014.  The Plaintiff and E.J. Estes were married for over 45 years.

1.2.   Defendant Wells Fargo Home Mortgage ("Wells Fargo") is headquartered in Des Moines, Iowa, does business in the State of Washington, and has a corporate agent for service of process in Tumwater, Washington.  Wells Fargo is the servicer of Plaintiff's home mortgage loan.

1.3.   Defendant Federal National Mortgage Association ("Fannie Mae") is a public government-sponsored enterprise headquartered in Washington, D.C. that owns numerous residential mortgages in Washington State.  Fannie Mae is the owner of Plaintiff's home mortgage loan.

1.4.   Defendant Northwest Trustee Services, Inc. ("Northwest Trustee") is incorporated in and does business in Washington State.  Northwest Trustee is the foreclosure trustee appointed by Wells Fargo.  Northwest Trustee served Plaintiff with a Notice of Default on or around June 24, 2013.  As the foreclosing trustee, Northwest Trustee is a necessary party to this action.  Unless enjoined, Northwest Trustee will sell Plaintiff's home at a foreclosure auction.

## II. JURISDICTION

2.1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.  This is an action between citizens of different states, the matter in controversy exceeds the sum of $75,000, and no real defendant in interest is a citizen of Washington.

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 2

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

## III. FACTUAL ALLEGATIONS

### A. The Property and Loan at Issue

3.1.  Over the course of two years in the early 2000's, Plaintiff and her husband built the home that now stands at 18707 NE 229th Court, Brush Prairie, Washington, 98606.  The house is a single level structure that is wheelchair accessible, and was specifically designed to accommodate the Plaintiff and her husband as they aged.

3.2.  On December 20, 2002, Plaintiff and her husband obtained a home mortgage loan.  Plaintiff and her husband executed a promissory note (the "Note"), in the principal amount of $308,000.00, payable to First Horizon Corporation d/b/a First Horizon Home Loans.  The Note was secured by a Deed of Trust encumbering the Property.

3.3.  The Deed of Trust was subsequently assigned from First Horizon Corporation d/b/a First Horizon Home Loans to Fannie Mae.

3.4.  Fannie Mae contracted with Wells Fargo to service the Plaintiff's home mortgage loan.

### B. Hardship and Request for Mortgage Assistance

3.5.  In December 2007, Plaintiff's husband, E.J. Estes, suffered a massive stroke.  E.J. Estes spent three months in the hospital.  The stroke left him completely disabled.  E.J. Estes is confined to his bed and needs assistance with all activities of daily living.

3.6.  Plaintiff became E.J. Estes' full-time caregiver.  Plaintiff was authorized to act as guardian of the person and estate of her husband.

3.7.  At the time of his stroke, E.J. Estes was employed full-time at S.I. Grace, LLC, a commercial contractor in Tigard, Oregon.  Plaintiff was also employed part-time at S.I Grace, LLC as the office manager at the business's jobsite.

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 3

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

3.8.  Due to the loss of income resulting from E.J. Estes' disability, Plaintiff contacted Wells Fargo to request mortgage assistance in December 2008.

3.9.  Over the next few months, Plaintiff sent in information to Wells Fargo about her and her husband's finances.  Plaintiff sent Wells Fargo verification of her income, bank statements, and all other application materials required by Wells Fargo to be considered for a loan modification.

3.10.  In a letter dated September 22, 2009 that was sent to Plaintiff, Wells Fargo stated:

> "Based on our recent conversation about your current mortgage payment issues, we've gone back and carefully reviewed your situation and the information you provided. That's why we're writing you today—to let you know the results of our review.  You may be eligible for a trial modification plan under the government's Home Affordable Modification Program, and we estimate your new payment amount to be $1,167."

3.11.  This letter explained that to proceed with the modification process, Plaintiff needed to complete the following steps: (1) "You must call us to finalize this offer by October 6, 2009 so that we can establish your trial modification plan;" (2) "During the phone call, we'll schedule a date for your first trial payment using our free Wells Fargo Easy Pay automatic payment service.  Please have your checking account information ready when you call;" (3) "You will need to make two additional payments at your modified amount using Wells Fargo Easy Pay over the following sixty days;" (4) "Within a week of setting up your trial payments, we will send you a package of information that clearly spells out the full terms and documentation you need to supply."

3.12.  The letter closed with the following statement: "Don't let this opportunity to lower your monthly mortgage payments through the Home Affordable Modification Program

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 4

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

pass you by.  Call us right away to schedule your required trial period payments and *you are in the program*.  It's that easy."

3.13.  Subsequently, Plaintiff never received the promised "package of information that clearly spells out the full terms and documentation you need to supply."  Moreover, after receiving this letter, Wells Fargo did not request additional documentation from Plaintiff for several months.

3.14.  On October, 2, 2009, Plaintiff called Wells Fargo to schedule the trial period plan ("TPP") payments and provide her checking account information.  Plaintiff spoke with a Wells Fargo representative named Monica.   Monica helped Plaintiff set up automatic payments that would be directly withdrawn from her checking account on October 10, November 10, and December 10, 2009.  Monica gave Plaintiff confirmation numbers for these automatic withdrawals.  Wells Fargo did not request any additional documentation from the Plaintiff at this time.

3.15.  Before accepting the trial modification offer from Wells Fargo, Plaintiff was current on her mortgage and the unpaid principal balance was approximately $285,360.20.

3.16.  After the first TPP payment was made, Plaintiff received a letter stating that she and her husband were in default on their home mortgage loan.  Plaintiff called Wells Fargo to discuss this letter.  A representative at Wells Fargo named Melissa explained that Plaintiff was technically late on her loan payments per the original note.  However, Melissa further explained that Plaintiff was in the home loan modification program and working on a different payment plan.  Melissa instructed Plaintiff to continue to make the TPP payments.  Wells Fargo did not request any additional documentation from the Plaintiff at this time.

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 5

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

3.17. Plaintiff made the required three TPP payments using the Wells Fargo Easy Pay automatic payment service. After making the required TPP payments, Plaintiff continued to make monthly mortgage payments at the modified amount for 50 months.

3.18. On January 6, 2010, Plaintiff spoke with a representative from Wells Fargo named Krista in the Loss Mitigation Department. Krista requested that Plaintiff fax Wells Fargo copies of her bank statements for the last three months. Plaintiff faxed copies of the bank statements later that day.

3.19. On March 10, 2010, Plaintiff received a letter stating the following: "Unfortunately, after carefully reviewing the information you've provided, we are unable to adjust the terms of your mortgage. We can only process your request for payment assistance if we have additional information from you. We have been unable to reach you to discuss your situation. For that reason, you have not been approved for assistance with your current payment challenges."

3.20. On March 11, 2010, Plaintiff called Wells Fargo and spoke with a representative named Diana in the Loss Mitigation Department. Diana instructed Plaintiff to re-fax all her financial documents. Plaintiff re-faxed all her documents later that day.

3.21. On March 17, 2010, Plaintiff received a loan modification starter kit in the mail from Wells Fargo. Plaintiff completed all the forms and updated all her financial information. She returned the completed application on April 3, 2010.

3.22. On August 13, 2010, the Plaintiff received a letter stating the following: "Unfortunately, after carefully reviewing the information you've provided, we are unable to adjust the terms of your mortgage. You have not been approved for a mortgage loan

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 6

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

modification because we were unable to get you to a modified payment amount that you could afford per the investor guidelines on your mortgage."

3.23.   Plaintiff continued to submit documentation to Wells Fargo in an attempt to have her loan permanently modified throughout 2010 and 2011.  In early 2011, Plaintiff received a Notice of Default from Northwest Trustee Services.  Plaintiff continued to make payments to Wells Fargo at the modified amount.  The January 2011, February 2011, and March 2011 payments were returned to Plaintiff, but subsequent payments were accepted by Wells Fargo.

3.24.   After sending in loan modification documents since 2008, in early 2011, Plaintiff filed a complaint against Wells Fargo with the Office of the Comptroller of the Currency in yet another attempt to get Wells Fargo to permanently modify her loan.  Ms. Kelly Crippen, a representative from Wells Fargo, responded to the complaint.  In a telephone call, Ms. Crippen informed Plaintiff that she was within $406.12 of qualifying for a loan modification.  Ms. Crippen told Plaintiff that eliminating a $465.00 monthly payment on the Estes' handicapped-accessible van would enable Wells Fargo to modify the loan.  Plaintiff spoke with her siblings about taking over the van payments in order to qualify for a modification.  Ms. Crippen instructed Plaintiff to fax over documentation that the van payments would be paid by her siblings.  This documentation was sent to Wells Fargo in June 2011.  In July 2011, a different Wells Fargo representative named Thomas Lindaman called Plaintiff to inform her that eliminating the van payments from her monthly expenses did not fix the problem, and Wells Fargo would not modify her loan.

3.25.   In a letter dated October 30, 2012, Wells Fargo once again denied Plaintiff's request for mortgage assistance.  The denial letter stated: "We carefully reviewed the

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 7

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

information you provided and explored a number of mortgage assistance options.  At this time, we have determined that you do not meet the investor requirements of the program because: You have exceeded the number of modifications allowed by the investor."  Plaintiff received this letter even though her loan had never been modified.

3.26.  On or around June 24, 2013, Plaintiff received a Notice of Default from Northwest Trustee Services.  The Notice of Default stated the total past due amount on the loan was $73,935.69.

3.27.  Plaintiff has made the modified payment on her loan consistently since October 2009 with only one exception (Plaintiff's HUD housing counselor instructed Plaintiff to withhold the November 2012 payment after an unsuccessful foreclosure mediation with Wells Fargo).  Wells Fargo accepted these payments, with the exception of the payments made in January 2011, February 2011, March 2011, and October 2013, which were returned to Plaintiff.

3.28.  Fannie Mae contracted with Wells Fargo to service Plaintiff's loan.  All the allegations in this Complaint occurred while Defendant Wells Fargo was acting as an agent for Defendant Fannie Mae.

## IV. CAUSES OF ACTION

### First Cause of Action: Breach of Contract (Breach of a TPP Agreement)

4.1.  Plaintiff realleges and incorporates by reference all allegations set forth in each of the preceding paragraphs of this Complaint.

4.2.  Wells Fargo made an offer to Plaintiff to review her for a home mortgage modification under the HAMP Program.  In a letter dated September 22, 2009, Wells Fargo offered to review Plaintiff for a modification if she made three trial period plan ("TPP")

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 8



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

payments in an amount lower than the mortgage payments specified in her Note and if she provided requested documentation.

4.3.  Plaintiff accepted Wells Fargo's offer by submitting three TPP payments in October, November, and December 2009.  Plaintiff also provided all documentation that was requested by Wells Fargo.  Plaintiff fulfilled all her obligations under the TPP.

4.4.  Plaintiff furnished valuable consideration, including but not limited to making the three TPP payments, fulfilling the burdensome documentation requirements of the loan modification review process, and by suffering the negative credit consequences of making partial mortgage payments.

4.5.  Through mutual assent and consideration, a valid contract was formed between Plaintiff and Wells Fargo.

4.6.  Wells Fargo breached this contract.  Treasury Supplemental Directive 09-01 states that if a loan servicer offers a borrower a TPP, and subsequently determines that the borrower is not eligible for a permanent modification, the servicer should "promptly communicate that determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative."  Wells Fargo failed to "promptly" notify Plaintiff that she was ineligible for a modification.  Plaintiff made her first TPP payment on October 10, 2009, and Wells Fargo did not clearly communicate to the Plaintiff that she did not qualify for a permanent loan modification until August 13, 2010.

4.7.  Wells Fargo's actions were the proximate cause of Plaintiff's default on her home mortgage loan and the initiation of foreclosure proceedings against Plaintiff.  Before receiving the offer to modify her loan from Wells Fargo, Plaintiff had never missed a payment on her loan.  Moreover, at the time she received the letter informing her that she was not eligible for

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 9

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

a permanent loan modification, her loan was hopelessly in default and Plaintiff had no viable options to bring her account current.

4.8.  Plaintiff suffered damages as a result of Wells Fargo's breach, including, but not limited to, lost money, lost equity, negative implications on her credit, the non-current status of her home mortgage loan account, the referral of her home mortgage loan to foreclosure proceedings, and emotional damages connected to the fear of losing her home.

**Second Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing**

4.9.  Plaintiff realleges and incorporates by reference all allegations set forth in each of the preceding paragraphs of this Complaint.

4.10.  There is in every contract an implied duty of good faith and fair dealing, obligating parties to cooperate with each other so that each may obtain the benefit of performance.

4.11.  The TPP agreement entered into by Plaintiff and Wells Fargo, referenced above in Paragraphs 4.2-4.5, included an implied covenant of good faith and fair dealing.

4.12.  The common purpose of the TPP agreement was to determine whether Plaintiff's home mortgage loan could be modified under the HAMP Program.  Plaintiff was justified in believing that Wells Fargo, as her loan servicer, would carefully and professionally conduct the review of her application for a loan modification.  However, Wells Fargo routinely breached its duty of good faith and fair dealing over the course of several years by:

    a. Consistently providing Plaintiff with inaccurate and misleading information about the HAMP Program.  Specifically, Wells Fargo misrepresented the requirements for achieving a permanent loan modification.

    b. Mishandling the Plaintiff's financial documents and loan modification application materials and accusing Plaintiff of not providing documents that were in its possession.

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 10



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

    c. Failing to promptly review Plaintiff for a permanent HAMP modification.

    d. Accepting Plaintiff's trial payments when it had no ability or no intention of permanently modifying Plaintiff's loan.

4.13. Wells Fargo's breach of the covenant of good faith and fair dealing has resulted in significant damages to Plaintiff, including, but not limited to, lost money, lost equity, negative implications on her credit, the non-current status of her home mortgage loan account, the referral of her home mortgage loan to foreclosure proceedings, and emotional damages connected to the fear of losing her home.

**Third Cause of Action:**
**Violation of the Consumer Protection Act (Unfair and Deceptive Business Practices)**

4.14. Plaintiff realleges and incorporates by reference all allegations set forth in each of the preceding paragraphs of this Complaint.

4.15. Wells Fargo's actions, as alleged herein, violate the Washington Consumer Protection Act, RCW 19.86, and: (1) are unfair and deceptive, (2) have occurred in trade or commerce, (3) negatively affect the public, including thousands of Washington residents who have or are working with Wells Fargo to modify their home mortgage loans, and (4) have caused injuries to Plaintiff as alleged below.

4.16. Wells Fargo engaged in unfair and deceptive acts or practices by:

    a. Luring Plaintiff into default on her home mortgage loan with the promise or the prospect of a loan modification and a lower monthly mortgage payment, only to inform her ten months later that she was denied for the HAMP Program. When Plaintiff was finally denied, she was hopelessly behind on her mortgage payments with no viable options for curing the default.

    b. Offering Plaintiff a trial modification that could not be converted to a permanent modification under Fannie Mae's guidelines. Wells Fargo either knew, or should have known, that the TPP it offered to Plaintiff could not be converted to a permanent modification.

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 11



NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

    c. Continually providing Plaintiff contradictory and incorrect information regarding her qualification for a permanent HAMP loan modification.

The acts and practices outlined above have the capacity to deceive a substantial portion of the public. In addition, the acts and practices outlined above are unfair because these acts or practices (1) have caused substantial financial injury to the Plaintiff; (2) are not outweighed by any countervailing benefits to consumers or competitors; and (3) are not reasonably avoidable by consumers. Furthermore, the acts and practices listed above are unfair because these acts and practices are immoral, unethical, oppressive and/or unscrupulous.

  4.17. Wells Fargo's actions occurred in trade or commerce. Wells Fargo is a mortgage loan servicer. As such, Wells Fargo is responsible for the day-to-day management of the mortgage loan accounts of thousands of Washington homeowners. Upon information or belief, Wells Fargo collects a percentage of each mortgage payment made by a borrower in exchange for servicing a loan for the lender.

  4.18. Wells Fargo's actions affect the public interest. Wells Fargo's general course of conduct as alleged herein is injurious to the public interest. Moreover, this conduct is ongoing and/or has a substantial likelihood of being repeated. Upon information or belief, Wells Fargo is working (and has worked) with thousands of Washington homeowners on loan modifications, and it is likely that similar fraudulent actions are/have been perpetrated on other consumers.

  4.19. As a direct and proximate result of Wells Fargo's unfair and deceptive actions, Plaintiff suffered injury. Plaintiff's injuries include, but are not limited to, lost money, lost equity, negative implications on her credit, the non-current status of her home mortgage loan account, the referral of her home mortgage loan to foreclosure proceedings, and emotional damages connected to the fear of losing her home.

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 12

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

4.20.  The Court should award Plaintiff damages proximately caused by such illegal conduct, plus penalties for each violation and reasonable attorney's fees and costs.

**Fourth Cause of Action: Negligent Misrepresentation**

4.21.  Plaintiff realleges and incorporates by reference all allegations set forth in each of the preceding paragraphs of this Complaint.

4.22.  Wells Fargo owed Plaintiff a duty to provide her with accurate information regarding her request for mortgage assistance and the HAMP Program.

4.23.  Wells Fargo provided Plaintiff with false information when it stated in a letter dated September 22, 2009, that she "may be eligible for a loan modification under the government's Home Affordable Modification Program."  Before Plaintiff received the TPP offer, Plaintiff had already supplied Wells Fargo with all her financial information, and Wells Fargo had reviewed this information.  As a result, at the time Wells Fargo offered her the TPP, Wells Fargo either knew, or should have known, that Plaintiff *did not* qualify for a permanent HAMP modification under the guidelines established by Fannie Mae.  Wells Fargo offered Plaintiff a trial plan that at that time, and at any time in the future (assuming the Plaintiff's income remained the same), could *never* be converted to a permanent modification under Fannie Mae's guidelines.

4.24.  Wells Fargo provided Plaintiff with false information when it stated that eliminating the $465.00 payment on her handicapped-accessible van would enable Wells Fargo to modify her loan.  Upon information or belief, a homeowner's monthly expenses are not part of the calculation to determine whether a homeowner is qualified for a HAMP modification under Fannie Mae's guidelines.  As such, it was false to tell Plaintiff that

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 13



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

modifying her expenses would have *any* impact on her qualification for a permanent HAMP modification.

4.25. Wells Fargo supplied Plaintiff with false information in the course of business in which Wells Fargo had a pecuniary interest. Wells Fargo is Plaintiff's home mortgage loan servicer. As such, Wells Fargo is responsible for the day-to-day management of Plaintiff's mortgage loan account. Upon information or belief, Wells Fargo collects a percentage of each mortgage payment made by a borrower in exchange for servicing a loan for the lender.

4.26. Supplying such obviously false information demonstrates a lack of the exercise of reasonable care or competence in communicating with Plaintiff.

4.27. Because servicers manage the review of homeowners for the HAMP Program, it was reasonable for Plaintiff to rely on information provided by Wells Fargo concerning the application, review, and qualification process for HAMP.

4.28. Wells Fargo's negligent misrepresentation caused Plaintiff injuries, including, but not limited to, lost money, lost equity, negative implications on her credit, the non-current status of her home mortgage loan account, the referral of her home mortgage loan to foreclosure proceedings, and emotional damages connected to the fear of losing her home.

**Fifth Cause of Action: Outrage**

4.29. Plaintiff realleges and incorporates by reference all allegations set forth in each of the preceding paragraphs of this Complaint.

4.30. Wells Fargo engaged in extreme or outrageous conduct when it lured Plaintiff into default on her home mortgage loan with the promise of a loan modification and a lower monthly mortgage payment, only to inform her ten months later that she was denied for the HAMP Program. When Plaintiff was finally denied, she was hopelessly behind on her

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 14

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

mortgage payments with no viable options for curing the default. Moreover, Wells Fargo either knew, or should have known, that it could not convert Plaintiff's trial loan modification into a permanent modification under Fannie Mae's guidelines.

4.31. Wells Fargo's conduct was reckless and caused Plaintiff severe emotional distress, including fear that she would lose her home, fear that her credit had been ruined and would prevent the acquisition of a new home, sleeplessness, and general anxiety.

4.32. The emotional distress experienced by Plaintiff was further exacerbated by the fact that she was desperately seeking to avoid foreclosure because her home had been modified to be accessible for her disabled husband, and Plaintiff feared that other homes and/or living situations would not meet his specific medical needs.

### Sixth Cause of Action: Promissory Estoppel

4.33. Plaintiff realleges and incorporates by reference all allegations set forth in each of the preceding paragraphs of this Complaint.

4.34. Wells Fargo made a promise to permanently modify the Plaintiff's loan if she made three TPP payments and provided requested documentation.

4.35. Wells Fargo should have reasonably expected Plaintiff to rely on its promise to modify her loan, and sending in a lower payment amount resulted in Plaintiff going into default on her loan.

4.36. Plaintiff justifiably relied on this promise and made TPP payments in October, November, and December 2009. Plaintiff continued to make this payment for the next four years.

4.37. Plaintiff was injured by her reliance on Wells Fargo's promise when, after Plaintiff made her TPP payments and provided requested documents, Wells Fargo referred the

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 15



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

1  Plaintiff's loan to foreclosure proceedings and continued to accept the trial payment amount

2  for over four years.

3      4.38.  Wells Fargo made a second promise to permanently modify Plaintiff's loan if

4  she eliminated the $465.00 monthly payment on her handicapped-accessible van.

5      4.39.  Plaintiff was injured by her reliance on Wells Fargo's second promise when,

6  after having her siblings take over the van payments, Wells Fargo again refused to modify

7  Plaintiff's loan and continued with foreclosure proceedings.

8      4.40.  Upon information or belief, Wells Fargo continues to charge late fees and

9  penalties, causing Plaintiff's loan balance to escalate.

10      4.41.  Injustice can be avoided only by enforcement of the permanent loan

11  modification agreement.

## V.  REQUEST FOR RELIEF

WHEREFORE, having stated her allegations and claims, Plaintiff respectfully requests the following relief:

    1. That the Court award general damages in an amount to be determined at trial;

    2. That the Court award treble damages for each and every violation of the Consumer Protection Act, plus attorney's fees and costs;

    3. That the Court grant injunctive relief against all defendants prohibiting the foreclosure of Plaintiff's residence by any entity or person until further order of this Court;

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 16


NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

4. For such other relief that the Court deems equitable and just.

Dated this 28th day of August, 2014.

                                      /s/ Nathan A. Quigley
                                      Nathan A. Quigley, WSBA #45403
                                      Attorney for Plaintiff



Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 17

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

### Certificate of Service

I hereby certify that on the date given below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to the following persons:

Molly J. Henry
Robert J. Bocko
Keesal, Young & Logan
1301 Fifth Avenue, Suite 3300
Seattle, WA 98101
Attorneys for Defendants Wells Fargo and Federal Nation Mortgage Association
Emails:        Molly.Henry@KYL.com
               Robert.Bocko@KYL.com

And served a copy upon the following persons(s) via First Class U.S. mail, postage prepaid:

Charles E. Katz
Northwest Trustee Services, Inc.
1241 East Dyer Road, Suite 250
Santa Ana, CA 92705
Attorney for Defendant Northwest Trustee Services, Inc.

DATED this 29th day of August, 2014, at Seattle, Washington.

/s/ Marcia Gay
Marcia Gay
Paralegal
Northwest Consumer Law Center

Case No.: 3:14-cv-05234-BHS
FIRST AMENDED COMPLAINT - 18



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337