1

2
**The Honorable Benjamin H. Settle**

3

4

5

6

7
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10
Paulette M. Estes, on behalf of herself and her marital community,

11

12
Plaintiff,

13
v.

14
Wells Fargo Home Mortgage;
Federal National Mortgage Association; and Northwest Trustee Services, Inc.

15

16
Defendants.

17

**Case No.: 3:14-cv-05234-BHS**

**PLAINTIFF'S OPPOSITION TO WELLS FARGO AND FANNIE MAE'S MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT**

18

19

20

21

22

23

24

25

26

27

28



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

## I. Introduction

Defendants have filed a motion to dismiss and/or motion for summary judgment. This opposition brief will demonstrate that Plaintiff's amended complaint alleges sufficient facts to state claims for relief that are plausible on their face. In addition, this brief will illustrate that Plaintiff has set forth specific facts showing that there is a genuine issue for trial on these claims. For the reasons stated below, the Defendants' motion should be denied in its entirety.

## II. Background

Plaintiff, Paulette Estes, and her husband, E.J. Estes, built their home that now stands at 18707 NE 229th Court in Brush Prairie, Washington. First Amended Complaint ("FAC") ¶ 3.1. In 2002, the couple obtained a home loan, secured by a deed of trust on the property. *Id.* ¶ 3.2. Soon after the home loan's inception, Wells Fargo began servicing the loan. *Id.* ¶ 3.4.

In December 2007, E.J. Estes suffered a massive stroke that left him completely disabled and in need of assistance with all activities of daily living. *Id.* ¶ 3.5. Plaintiff became her husband's full-time caregiver. *Id.* ¶ 3.6. Due to the couple's loss of income, Plaintiff contacted Wells Fargo to discuss options for lowering her mortgage payment. *Id.* ¶ 3.8.

Over the next few months, Plaintiff diligently sent the requested financial information to Wells Fargo in the hopes of participating in the recently launched Home Affordable Modification Program ("HAMP"). *Id.* ¶ 3.9. After months of sending Wells Fargo documents so that she could be considered for a modification, Plaintiff received a letter on September 22, 2009, which stated: "You may be eligible for a trial modification plan under the government's Home Affordable Modification Program, and we estimate your new payment amount to be $1,167." *Id.* ¶ 3.10. The letter instructed Plaintiff to call Wells Fargo to "finalize this offer" and to schedule her trial payments. *Id.* ¶ 3.11. The letter closed with the following statement:

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 1

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

"Don't let this opportunity to lower your monthly mortgage payments through the Home Affordable Modification Program pass you by.  Call us right away to schedule your required trial period payments and you are in the program.  ***It's that easy***."  *Id.* ¶ 3.12 (emphasis added).

Plaintiff did not find the process to be easy.  In fact, Plaintiff's acceptance of Wells Fargo's offer started a multi-year struggle to avoid foreclosure.  After setting up her first trial payment, Plaintiff immediately received a letter from Wells Fargo stating that she was in default on her loan.  *Id.* ¶ 3.16.  When Plaintiff called Wells Fargo to discuss this letter, a Wells Fargo representative told Plaintiff to continue making trial payments.  *Id.*  Almost a year after receiving the September 22, 2009, letter, Plaintiff received a denial letter.  *Id.* ¶ 3.22.  At this point, Plaintiff was hopelessly far behind on her mortgage payments.  However, she continued to make her trial payments and Wells Fargo continued to accept these payments.  *Id.* ¶ 3.27.

In early 2011, Plaintiff filed a complaint with the Office of the Comptroller of the Currency regarding Wells Fargo's mismanagement of her request for mortgage assistance.  *Id.* ¶ 3.24.  Kelly Crippen at Wells Fargo responded to the complaint; Ms. Crippen promised that if Plaintiff eliminated the $465.00 payment for her handicapped accessible van, Wells Fargo would offer her a loan modification.  *Id.*  Plaintiff had her siblings take over the payment on the van.  *Id.*  Again, Wells Fargo refused to modify the loan.  *Id.*  However, Wells Fargo continued to accept Plaintiff's trial payments.  *Id.* ¶ 3.27.  On or around June 24, 2013, Plaintiff received a Notice of Default; this notice stated that the total past due amount on the loan was $73,935.69.  *Id.* ¶ 3.26.

Plaintiff made the trial payment consistently since October 2009 with only one exception.  *Id.* ¶ 3.27.  Plaintiff made—and Wells Fargo accepted—this payment 48 times.  In October 2013, Wells Fargo returned Plaintiff's $1,167 trial payment.  *Id.*

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 2

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III. Argument

**A. Motion to Dismiss**

Dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  *Rae v. Union Bank,* 725 F.2d 478, 479 (9th Cir. 1984).  For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. *Rosen v. Walters,* 719 F.2d 1422, 1424 (9th Cir. 1983).  The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010).

### 1. Plaintiff stated a claim for breach of the trial period plan ("TPP").

A contract requires offer, acceptance, and consideration.  *See Yakima County Fire Protection Dist. No. 12 (West Valley) v. Yakima,* 122 Wn.2d 371, 389-90, 858 P.2d 245 (1993). A breach of contract is actionable if "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant."  *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712, 899 P.2d 6 (1995).  In the special context of a TPP under HAMP, where "borrowers allege . . . that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement."  *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 879, 884 (9th Cir. 2013).  Further, if the servicer "determines that a borrower is ***not eligible for a modification***, the bank should '***promptly*** communicate that determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative.'"  *Id*. at 884-885 (citing Treasury Supplemental Directive 09-01) (emphasis added).

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 3

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

Plaintiff's complaint alleges that Wells Fargo breached the TPP agreement when it "failed to '***promptly***' notify [her] that she was ineligible for a modification." FAC ¶ 4.6. The complaint alleges that 11 months elapsed between the time Plaintiff made her first trial payment and the time that Wells Fargo notified Plaintiff that she was not eligible for a modification.[1] *Id*. It should take no longer than three months (the time during which the homeowner is making the three trial payments) for a mortgage servicer to determine whether a homeowner is eligible for a modification under HAMP. *See Corvello* at 880-881 (explaining that servicers use the trial period to collect the necessary documentation to "confirm that the borrower[s]" are eligible for a modification). Thus, by waiting 11 months to inform Plaintiff that she was not eligible for a modification, Wells Fargo failed to "***promptly*** communicate that determination" to Plaintiff, and this failure violated the TPP agreement. *See Corvello* at 884-885 (citing Treasury Supplemental Directive 09-01) (emphasis added). Promptly informing homeowners of ineligibility for a permanent modification is vital because homeowners fall further into default each month they send in a trial payment in lieu of a regular payment.

Defendants argue that "Plaintiff admits Wells Fargo notified her on March 10, 2010, that she was denied for a permanent loan modification." Dkt. 26 at 5. Plaintiff disputes any such admission. In fact, the letter that Plaintiff received on March 10, 2010, did not state that Plaintiff was "not eligible for a modification" and did not fulfill the notification requirements articulated in *Corvello*. The letter dated March 10, 2010, stated the following: "We can only ***process your request for payment assistance if we have additional information from you***. . . . For that reason, you have not been approved for assistance with your current payment

---

[1] Specifically, the letter dated August 13, 2010, explained that Plaintiff was not eligible for a modification because "we were unable to get you to a modified payment amount that you could afford per the investor guidelines on your mortgage." FAC ¶ 3.22.

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 4

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

challenges." FAC ¶ 3.19 (emphasis added).  "Not eligible for a modification" implies that a

servicer has reviewed the homeowner's financial documentation and has made a final

determination that the homeowner is not eligible for a modification (i.e., the trial modification

cannot be converted to a permanent modification).  In contrast, the March 10, 2010, letter

merely stated that Plaintiff was "not approved for assistance" because Wells Fargo needed

"additional information"[2] from Plaintiff to "***process***" her request for a modification.  FAC ¶

3.19.  If Wells Fargo was still "process[ing]" Plaintiff's request for a loan modification, then

Wells Fargo had not yet determined her eligibility for a loan modification.  *Id*.  Thus, this letter

states nothing about Plaintiff's final eligibility for a modification and should not be viewed as a

denial letter that complied with the notification requirements of *Corvello*.

   Defendants also argue that *Corvello* is "limited to the specific facts of that case."  Dkt.

26 at 4.  Defendants do not cite a single case to provide support for the argument that the

holding in *Corvello* is case specific.  Dkt. 26 at 4-6.  In fact, *Corvello* stands for the general

proposition that when "borrowers allege . . . that they have fulfilled all of their obligations under

the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have

valid claims for breach of the TPP agreement."  *Corvello* at 884.  Moreover, *Corvello* has been

described as "represent[ing] a sea change" with respect to the obligation of servicers under

TPPs; this description suggests that the case is viewed by other courts as something far more

significant that a case specific holding.  *See Memmott v. OneWest Reg'l Bank, FSB*, 2014 WL

715441, at *1 (D. Or. Feb. 21, 2014).  Furthermore, courts have applied *Corvello* in a host of

---

[2] Moreover, Plaintiff disputes that Wells Fargo needed additional information from her to determine her eligibility for a loan modification in March 2010.  *See* FAC ¶ 4.3 (alleging Plaintiff "provided all documentation requested by Wells Fargo").  Plaintiff also alleges that Wells Fargo "mishand[ed]" her financial documents and "accus[ed] [her] of not providing documents that were in its possession."  FAC ¶ 4.12.b.  A letter asking for documents that Plaintiff alleges were already in Wells Fargo's possession cannot comply with the spirit of *Corvello*.

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 5

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

different situations where plaintiffs have brought claims for breach of a TPP agreement. *See e.g., Harris v. Bank of Am. Corp.*, 2014 WL 1116356, at *5 (C.D. Cal. Mar. 17, 2014) (applying *Corvello* in a case where the plaintiffs did not even "specifically allege that they had a TPP").

### 2. Plaintiff stated a claim for breach of the covenant of good faith and fair dealing

An implied covenant of good faith inheres in every contract. *Edmonson v. Popchoi*, 172 Wn.2d 272, 280, 256 P.3d 1223 (2011). The duty of good faith requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citing Restatement (Second) of Contracts § 205 cmt. a (1981)).

Defendants argue that Plaintiff has failed to allege a valid contract. Dkt. 26 at 6. However, as discussed above, *see supra* Part A.1, Plaintiff's complaint clearly alleges a valid contract (i.e., the TPP agreement she entered into with Wells Fargo). FAC ¶¶ 4.1-4.8. As a result, Plaintiff has stated a claim for breach of the covenant of good faith and fair dealing.

### 3. Plaintiff stated a claim for violation of the Consumer Protection Act

In order to support a claim for violation of the CPA, a plaintiff must allege: (1) and unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the plaintiff's business or property; and (5) the injury is causally linked to the unfair or deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

#### a. Plaintiff alleged multiple unfair and deceptive acts or practices.

To show that an act is deceptive, a "plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009). In the alternative, the plaintiff can show that an act is unfair under the CPA if it is "unethical,

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 6



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

oppressive, or unscrupulous." *See Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 786, 295 P.3d 1179 (2013) (citing *Magney v. Lincoln Mut. Sav. Bank*, 34 Wn. App. 45, 57, 659 P.2d 537 (1983)).  As the Supreme Court recently noted, "an act or practice can be unfair without being deceptive."  *Klem*, 176 Wn.2d at 785.

Plaintiff's complaint has alleged ***both*** unfair and deceptive practices on the part of Wells Fargo.  For example, Plaintiff alleges that Wells Fargo engaged in an unfair and deceptive act by "offering [her] a trial modification that could not be converted to a permanent modification" and that Wells Fargo "either knew or should have known, that the TPP it offered [her] could not be converted into a permanent modification."  FAC ¶ 4.16.b.  This alleged act is deceptive (i.e., "has the capacity to deceive a substantial portion of the public") because Plaintiff alleges that Wells Fargo was working with thousands of Washington homeowners on modifications, and the average homeowner would reasonably assume that she would not be offered a trial modification if her servicer had already determined that she was not qualified for a permanent modification.  *Id.* ¶ 4.18.  Thus, this practice has a high capacity to deceive the countless homeowners working with Wells Fargo.  This alleged conduct is also unfair (i.e., unscrupulous) because a servicer's decision to offer a trial modification that could not be converted to a permanent modification has no benefit to the homeowner; this act would do nothing except put the homeowner on a path to default and foreclosure.

### b. Plaintiff alleged an impact on the public interest.

For CPA claims not premised upon specific statutory violations, as here, a plaintiff may establish that an act or practice impacts the "public interest" because it: (a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons."  RCW 19.86.093(3).  Moreover, the requisite showing of "public interest" is

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 7

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

demonstrated when "the defendant's deceptive acts or practices have the potential for repetition." *Eastlake Const. Co. v. Hess*, 33 Wn. App. 378, 386, 655 P.2d 1160 (1982). Furthermore, Washington courts have found that the public interest element of a CPA claim can be established by showing that an entity has engaged in similar conduct affecting other homeowners/borrowers. *See, e.g.*, *Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wn.2d 83, 118, 285 P.3d 34 (2012) (finding that the public interest element of CPA claim was presumptively met because MERS was involved with an enormous number of mortgages).

Plaintiff alleges that Wells Fargo is working with thousands of Washington residents on loan modifications and that the unlawful conduct alleged is "ongoing" and has a "substantial likelihood of being repeated." FAC ¶ 4.18. Plaintiff's allegation that Wells Fargo is involved in the servicing of such a large number of mortgages in the state of Washington, and the allegation that similar unlawful actions are being "perpetrated on other consumers," are sufficient to survive a motion to dismiss. FAC ¶ 4.19; *see* Bain, 175 Wn.2d at 118.

Finally, in the order on Defendants' previous motion to dismiss, the Court said:

> Estes does allege that Wells Fargo is working with thousands of Washington residents on loan modifications. Estes argues that it is likely that other residents have been lured into the prospect of temporary loan modifications only to be later rejected for the program and served with subsequent notices that they are severely behind and in default of the original mortgages. Such allegation would seem to state a valid CPA claim.

Dkt. 23 at 10. This is precisely what the Plaintiff has alleged in her complaint.

### c. Plaintiff alleged injury to her property and loss of money.

"The injury element [of the CPA] will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 8

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

1   142 (1990).  The scope of injury to "property" is especially broad and is not restricted to

2   business injury.  *Keyes v. Bollinger*, 31 Wn. App. 286, 296, 640 P.2d 1077 (1982).

3       Plaintiff has clearly alleged that her property interest and money have been diminished

4   

5   because of Defendants' unlawful conduct.  First, Plaintiff alleged loss of equity in her property.

6   FAC ¶ 4.19.  Second, Plaintiff has alleged that Defendants' actions had "negative implications

7   to her credit."  *Id*.  The negative implications on Plaintiff's credit have diminished her money by

8   increasing the cost of credit.

9       Defendants cite to *Massey v. BAC Home Loans Servicing LP*, 2013 WL 6825309 (W.D.

10  Wash. Dec. 23, 2013) for the proposition that any injuries associated with foreclosure

11  

12  proceedings, including alleged loss of equity, are not cognizable injuries under the CPA.  Dkt.

13  26 at 11.  However, Defendants fail to provide essential context to understand *Massey*'s

14  reasoning and conclusion.  In *Massey*, a plaintiff brought a claim against her lender alleging that

15  it violated the CPA by "designating MERS as a beneficiary of [her] Deed of Trust.  *Id*. at *7.  In

16  

17  finding that the Plaintiff failed to show a cognizable injury, the Court said:

18      Ms. Massey fails to provide any evidence ***connecting her remaining injuries*** with
        MERS' presence on the Deed of Trust or Assignment (or, for that matter, with any other
19      action by Bank of America, MERS, or Freddie Mac).  Again, Ms. Massey admits that
        she stopped making payments on the Loan.  Any injuries associated with the foreclosure
20      proceedings, including the bankruptcy filing, 'damages to [her] credit,' and the alleged
        'loss of any equity in my home and the loss of my down payment,' were caused solely
21      by her own default."

22  

23  *Id*. at *8 (emphasis added).  The Court in *Massey* was not saying that a plaintiff's injuries

24  related to a foreclosure proceeding could never constitute an injury under the CPA as

25  Defendants have argued.  Rather, the Court in *Massey* merely noted that there must be some

26  connection between a plaintiff's injury and the defendant's unfair and deceptive practices.

27  

28  

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 9

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

The court in *Massey* concluded that Ms. Massey's default—which caused her alleged injuries—was not connected to the alleged unlawful conduct (the presence of MERS on the Deed of Trust).  In stark contrast, here, Plaintiff has specifically alleged that her default—which caused her alleged injuries—was *a direct result* of Wells Fargo's unfair and deceptive acts.  FAC ¶ 4.16.a (alleging that Wells Fargo lured Plaintiff into default).  Therefore, Plaintiff's alleged loss of equity is clearly connected to the unfair and deceptive actions of Wells Fargo.

### d. Wells Fargo is not exempt from Plaintiff's CPA claim.

In support of their argument that Wells Fargo is exempt from Plaintiff's CPA claim, Defendants cite to *Miller v. U.S. Bank of Washington*, 72 Wn. App. 416, 865 P.2d 536 (1994).  Defendants appear to argue this case supports the proposition that *all* CPA actions against national banks are exempt from the CPA under RCW § 19.86.170.  Dkt. 26 at 6-7.  However, this is an overly broad reading of *Miller*'s holding.  For example, the *Miller* court held: "The statute [RCW § 19.86.170] does not exempt actions or transactions *merely* because they were regulated generally; *the exemption applies only* if the particular practice found to be unfair and deceptive is *specifically* permitted, prohibited, or regulated."  *Id*. (citing *Vogt v. Seattle-First Nat'l Bank*, 117 Wn.2d 541, 552 (1991)) (emphasis added).

Plaintiff alleges that she was "lured into default on her mortgage loan with the promise or prospect of a loan modification" and that Wells Fargo offered her a trial modification that it knew "could not be converted to a permanent modification under Fannie Mae's guidelines."  FAC ¶¶ 4.16.a-b.  However, Defendants fail to cite to federal regulations *specifically* regulating a servicer's practice of luring customers into default with the promise of a loan modification or offering trial modifications that they know cannot be converted to permanent modifications.  *See* Dkt. 26 at 8.  Moreover, courts have held that questions of whether RCW § 19.86.170

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 10

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

preempts a plaintiff's CPA claim is "not appropriate to resolve" in a motion to dismiss. *Pierce v. NovaStar Mortgage, Inc.*, 422 F. Supp. 2d 1230, 1236 (W.D. Wash. 2006) (noting that in a motion to dismiss, the primary question before the court is whether the plaintiff has adequately pled a claim upon which relief can be granted and concluding that the inquiry into the "many questions of fact" related to preemption should not be resolved in a motion to dismiss).

### 4. Plaintiff stated a claim for outrage.

The elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Kirby v. City of Tacoma*, 124 Wn. App. 454, 473, 98 P.3d 827 (2004). The conduct of the defendant must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Strong v. Terrell*, 147 Wash. App. 376, 385, 195 P.3d 977 (2008).

Plaintiff alleges conduct that could be regarded as "utterly intolerable in a civilized society." *Id.* The complaint alleges that Wells Fargo lured Plaintiff—who was current on her mortgage—into default with the prospect of a loan modification. FAC ¶ 4.30. The complaint further alleges that "Wells Fargo either knew, or should have known, that it could not convert Plaintiff's trial loan modification into a permanent modification." *Id.* The allegations Wells Fargo lured Plaintiff into default with the promise of a modification it knew it could not deliver, and the Plaintiff's resulting referral to foreclosure proceedings, can certainly be regarded as atrocious behavior. Moreover, in *Montgomery v. SOMA Fin. Corp.*, 2014 WL 2048183, at *7 (W.D. Wash. May 19, 2014), a court recently found that "the allegation that BoA induced the [Plaintiff] to default and then attempted to foreclose on the property plausibly alleges extreme or outrageous conduct." This allegation is exactly what Plaintiff has alleged in her complaint.

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 11

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

In addition, Plaintiff has alleged that Wells Fargo's actions are reckless.  FAC ¶ 4.31.

"Recklessness may be found when the defendant is subjectively aware of a high probability that

harm will result, followed by a deliberate choice to take such a risk."  16 Wash. Prac., Tort Law

And Practice § 2:39.50 (4th ed.) (citing WPI 14.03.03).  The allegation that Wells Fargo was

aware that Plaintiff's trial modification could not be converted into a permanent modification,

and its decision to invite Plaintiff to participate in a trial modification in spite of this knowledge,

demonstrates recklessness, and states a plausible claim for relief.  A servicer would know that

inviting a homeowner to participate in a trial modification under these circumstances would put

her at risk of losing her home and experiencing extreme emotional distress.

Finally, Defendants cite to *Price v. State*, 114 Wn. App. 65, 57 P.3d 639 (2002) in

support of their argument that "Plaintiff is barred from recovering alleged emotional damages"

because the relationship involved "is primarily economic in nature."  Dkt. 26 at 15.  The court's

holding in *Price* is wholly inapplicable to the case at bar.  In fact, *Price* doesn't even involve a

claim of outrage, it is a case involving a claim of wrongful adoption and a Plaintiff's attempt to

get damages for emotional distress under this specific cause of action.  *Price v. State*, 114 Wn.

App. at 66.  Moreover, in *Robel v. Roundup Corp.*, 148 Wn.2d 35, 55, 59 P.3d 611 (2002), a

case which involves a claim of outrage, the court upheld an award of damages on a Plaintiff's

lawsuit against her employer, where the relationship was primarily economic in nature.

**5. Plaintiff's claim for negligent misrepresentation.**

Plaintiff will not oppose the dismissal of her claim for negligent misrepresentation.

**6. Plaintiff stated claims against Fannie Mae.**

It is the general rule that a principal may be held liable for the acts of the agent if such

acts are done within the scope of employment, although the principal may not know or approve

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 12

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

of them.  *See Titus v. Tacoma Smeltermen's Union Local No. 25*, 62 Wn.2d 461, 383 P.2d 504 (1963).  In addition, a business that employs an agent to perform tasks for it can even be held liable when the agent acts carelessly.  *See, e.g.*, *Chicago Title Ins. Co. v. Washington State Office of Ins. Com'r*, 178 Wn.2d 120, 138, 309 P.3d 372 (2013) (noting that "the theory of inherent agency power recognizes that agents may be overzealous or careless in doing the work assigned by the principal and may harm third parties as a result.  In that case, "[it] would be unfair for an enterprise to have the benefit of the work of its agents without making it responsible to some extent for their excesses and failures to act carefully.") (citing Restatement (Second) of Agency § 8A cmt. a (1958)).

Here, Plaintiff alleges that "Fannie Mae contracted with Wells Fargo to service Plaintiff's loan.  All the allegations in the complaint occurred while Defendant Wells Fargo was acting as an agent for Defendant Fannie Mae.  FAC ¶ 3.28.  As Plaintiff's servicer, all of Wells Fargo's interactions with her were within the scope of its employment with Fannie Mae.  Plaintiff also plead facts demonstrating that Wells Fargo was acting within the scope of its employment when the unlawful conduct occurred.  For example, Plaintiff alleged that Wells Fargo was reviewing Plaintiff for a modification using the guidelines established by Fannie Mae.  FAC ¶ 4.16.b.  Fannie Mae is ultimately responsible for ***all*** of Wells Fargo's actions, ***even if*** the court concludes that Wells Fargo carelessly discharged its duty.  Even without drawing reasonable inferences in Plaintiff's favor, the allegation of an agency relationship supports the theory of vicarious liability.  As a result, Plaintiff stated a claim against Fannie Mae.

**B. Motion for Summary Judgment**

To prevail on a motion for summary judgment, the moving party must show by reference to pleadings, discovery, admissions, and affidavits that "there is no genuine issue as to

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 13



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (a)-(c).  In deciding a motion for summary judgment, a court draws all inferences in the light most favorable to the party opposing the motion.  *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir. 1980).

### 1. Defendants have failed to meet their initial burden of production and have produced no evidence to show that they are entitled to summary judgment.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Once the movant's burden is met *by presenting evidence* which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial."  *Lombardi v. Maryland Cas. Co.*, 894 F. Supp. 369, 370 (D. Nev. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis added).  The "moving party may not require the nonmoving party to produce evidence supporting its claim or defense *simply by saying that the nonmoving party has no such evidence*."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000).  "*In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything*."  *Id.* at 1103 (emphasis added).

Here, instead of producing evidence, Defendants have "simply [stated] that the [Plaintiff] has no such evidence."  *See id*. at 1105.  For example, in arguing Plaintiff's promissory estoppel claim fails as a matter of law, Defendants argue "Plaintiff also lacks evidence that Wells Fargo ever promised Plaintiff that she would qualify for a loan modification if she eliminated the van payment.  Consequently, Plaintiff cannot show an essential element of her claim." Dkt. 26 at 16.  In addition, Defendants argue that "Plaintiff cannot show that justice requires any alleged promise should be enforced.  There is no evidence Plaintiff was harmed by

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS FARGO AND FANNIE MAE'S MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT - 14

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

having her family make the payments on her van.  Thus, there was no injustice." *Id*. at 16-17.

Throughout their motion, Defendants merely argue that Plaintiff has no evidence in a

conclusory manner.  Thus, Defendants are not entitled to summary judgment.

In their motion, Defendants suggest that they can meet the initial burden under *Celotex*

by merely pointing out through argument that Plaintiff lacks evidence of elements of her claims.

There are Ninth Circuit cases discussing how a moving party can "point out through argument"

that there is an absence of evidence to meet its initial burden.  *See, e.g.*, *Devereaux v. Abbey*,

263 F.3d 1070, 1076 (9th Cir. 2001); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532

(9th Cir. 2000).  However, these cases do not go so far as to say that the moving party "can

simply state that there is an absence of evidence with a conclusory statement." *Abad v. Gen.*

*Nutrition Centers, Inc.*, 2013 WL 4038617, at *4 (C.D. Cal. Mar. 7, 2013).  Under *Celotex*, at a

minimum, the moving party must make a "showing as to ***why*** [the non-moving party] do[es] not

have enough evidence to carry the ultimate burden of persuasion at trial."  *Id*. (citing *Nissan*

*Fire*, 210 F.3d at 1102).  Therefore, by simply arguing that Plaintiff has no evidence in a

conclusory manner, Defendants have not met the initial burden under *Celotex*.

### 2. Plaintiff can present sufficiently probative evidence of each element of her claims for promissory estoppel, breach of contract, breach of the duty of good faith, and outrage to survive summary judgment.

Even if the Court finds that Defendants have met their initial burden of production, the

declarations filed in support of this opposition brief present sufficiently probative evidence of

Plaintiff's claims to survive summary judgment.

### a. Plaintiff has submitted sufficient evidence to support her claim for promissory estoppel

Promissory estoppel requires: "(1) a promise which (2) the promisor should reasonably

expect to cause the promisee to change [her] position and (3) which does cause the promisee to

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 15

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

change [her] position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967).

In the declarations filed in support of her opposition brief, Plaintiff has set forth specific facts to establish the existence of each element of promissory estoppel that has been challenged by Defendants. First, Plaintiff's declaration states that a Wells Fargo representative, Kelly Crippen, promised Plaintiff that if she eliminated her $465.00 monthly payment on her handicapped-accessible van, Wells Fargo would offer her a permanent loan modification. Estes Decl., ¶ 15. In addition, the call log, which documents the communication between Plaintiff and Wells Fargo, reflects entries that also provide evidence that Wells Fargo assured Plaintiff that it would modify her loan if she reduced her expenses by eliminating the van payment. For example, on 2/28/2011 the call log reflects the following entry:

> OFFICE OF THE PRESIDENT CASEWORK COMMENTS ***OFFICE OF THE PRESIDENT*** CONTACTED A3P TO ADVISE OF THE DENIAL OF THE LOAN MOD. A3P WANTED TO KNOW WHAT BWRS CAN CHANGE TO BE APPROVED FOR A LOAN MOD. ADVISED A3P THAT BRW2 ADVISED SHE HAD FAMILY MEMBERS THAT WOULD BE WILLING TO MAKE HER CAR PMT, IF THEY DO MAKE HER CAR PMT, WE WILL NEED PROOF OF THAT ASSISTANCE BY SHOWING PROOF OF PAYMENT.

Quigley Decl., Ex. E, pp. 26-27. Thus, Plaintiff does have evidence that Wells Fargo promised her that she would qualify for a loan modification if she eliminated the van payment.

Moreover, Defendants have continually argued that it was unreasonable for Plaintiff to make trial payments and continue to diligently work with Plaintiff when she had received some denial letters. *See* Dkt. 26 at 16. However, the call log reflects that employees at Wells Fargo believed it was realistic that Plaintiff would be offered a permanent loan modification. For example, on 12/14/2010 the call log reflects the following entry: "They [the borrowers] want to

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 16

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

dispute the credit reporting and past due amount.  *I can probably help with the past due amount with a modification*, but I need to know who would be the point of contact for the credit reporting issue."  Quigley Decl., Ex. E, p. 32.  If Wells Fargo believed that it was realistic that Plaintiff would be offered a modification, then it was also realistic that Plaintiff would believe that she would be offered a modification if she kept sending in payments and working with Wells Fargo.  In addition, as discussed above, Kelly Crippen's promise that Plaintiff's loan would be modified if her expenses were reduced is evidence that Wells Fargo was consistently telling Plaintiff a loan modification was possible as late as 2011.  Estes Decl., ¶ 15.  This evidence shows that, even though the Plaintiff was receiving denial letters from Wells Fargo, she was also receiving information from Wells Fargo representatives that she could qualify for a HAMP modification.  Thus, her reliance on Wells Fargo's promises were justified.

Furthermore, Plaintiff has provided sufficient evidence in her declaration that injustice can only be avoided by enforcement of Wells Fargo's promise to modify Plaintiff's loan.  Plaintiff has alleged that she was lured into default and strung along by Wells Fargo for more than four years, only to have Wells Fargo move forward with a foreclosure.  Estes Decl., ¶¶ 16, 21-22.  Here, Plaintiff did everything Wells Fargo told her to do but still will likely lose her home.  As a result, justice requires enforcement of a permanent modification.

### b. Plaintiff has submitted sufficient evidence to support her claim for breach of the trial period plan ("TPP").

Defendants argue that "Plaintiff cannot establish a valid TPP contract because there is no evidence of consideration, an essential element of any contract."  Dkt. 26 at 17.  As discussed below, Plaintiff has presented sufficient evidence to survive summary judgment.

"[A]nything which fulfills the requirements of consideration will support a promise whatever may be the comparative value of the consideration, and of the thing promised."

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 17



520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

*Browning v. Johnson*, 70 Wn.2d 145, 146, 422 P.2d 314 *amended*, 70 Wn.2d 145, 430 P.2d 591 (1967) (quoting 1 Williston, Contracts § 115).  To constitute consideration, the performance may consist of "(a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation."  *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833-34, 100 P.3d 791 (2004) (citing Restatement (Second) of Contracts § 71(1)-(3) (1981)).  Moreover, courts have found that a plaintiff's active participation in a TPP was supported by consideration.  *See, e.g.*, *Lucia v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 1059, 1067 (N.D. Cal. 2011), *rev'd on other grounds*, *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 879, 884 (9th Cir. 2013) (finding that "the credit consequences of [plaintiffs'] partial mortgage payments and fulfilling the burdensome documentation requirements of the loan modification approval process" did "support the existence of the contract to participate in the TPP").

In her declaration, Plaintiff has provided sufficient and specific facts to establish the existence of a genuine issue as to whether the TPP agreement was supported by consideration.  First, Plaintiff has provided evidence that she agreed to change her method of payment when she responded to Wells Fargo's September 22, 2009, letter.  Estes Decl., ¶ 7.  Before receiving this letter, Plaintiff had mailed Wells Fargo her mortgage payment each month.  *Id*.  The September 22, 2009, letter instructed Plaintiff that she was required to make her trial payments via the Wells Fargo Easy Pay automatic payment service, and Plaintiff immediately contacted Wells Fargo and set up the automatic payments.  *Id.*; *see also* Quigley Decl., Ex B.  This act on the part of Plaintiff constitutes consideration because she took steps that she would otherwise not have taken in exchange for the opportunity to participate in HAMP.  In addition, Plaintiff has presented evidence that she spent countless hours fulfilling the document requirements of the HAMP Program.  Estes Decl., ¶ 17.  Plaintiff was under no preexisting obligation to provide



this documentation, and as a result, these acts also constitute consideration.  Furthermore, Plaintiff has offered evidence of the negative credit consequences she has suffered as a result of her participation in the TPP.  *Id.* ¶ 14; *see also* Quigley Decl., Ex G (reflecting the status of Plaintiff's Wells Fargo loan as "derogatory").  As a result of participating in the TPP, Plaintiff's credit report reflects that she is delinquent on her loan.  *Id.* ¶ 14.  Before entering the TPP agreement, Plaintiff had a perfect payment history on her mortgage.  *Id.* ¶ 9.  Thus, Plaintiff's ability to access credit has been negatively impacted because of her participation in the TPP, and the negative credit consequences she suffered constitute consideration.  Said another way, Plaintiff gave up her perfect credit to participate in the TPP.

### c. Plaintiff has submitted sufficient evidence to support her claim for breach of the duty of good faith and fair dealing.

Defendants argue that there is no evidence that the TPP agreement constituted a valid contract, so there can be no implied covenant of good faith.  Dkt. 26 at 18.  However, Plaintiff has offered sufficient evidence of a valid contract, *see supra* Part B.2.b.

Defendants also argue that Plaintiff has no evidence to support her assertion that Wells Fargo breached the duty of good faith and fair dealing by providing her with inaccurate and misleading information about the HAMP Program.  Dkt. 26 at 19.  In fact, Plaintiff has ample evidence that Wells Fargo knew that Plaintiff was ***not eligible*** for a permanent HAMP modification ***before*** she was invited to participate in a trial modification.  Thus, Plaintiff maintains that it was inaccurate and misleading for Wells Fargo to even send her the letter dated September 22, 2009, because Wells Fargo already knew she was not eligible for HAMP.

Plaintiff first applied for a loan modification in May 2009.  Estes Decl., ¶ 6.  The documentation she submitted to Wells Fargo reflected that Plaintiff's monthly income was comprised of her and her husband's Social Security benefits.  *Id.*  After review of her financial

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 19





520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

situation, Wells Fargo denied Plaintiff's request for a loan modification in a letter dated June 9, 2009. Quigley Decl., Ex. A. In this letter, Wells Fargo stated that Plaintiff's request for a modification "would be outside of [her] investor guidelines." *Id.* Only three months later, in a letter dated September 22, 2009, Wells Fargo invited Plaintiff to participate in a trial modification. *Id.*, Ex. B. Plaintiff's financial situation had not changed between the time she was denied for a modification June 2009 and the time she was sent the letter on September 22, 2009, which invited her to participate in a trial modification. *See* Estes Decl., ¶¶ 6, 13.

Wells Fargo should never have offered Plaintiff the TPP because it knew based on the previous denial and review of her finances, that it could not convert a trial modification to a permanent modification under Fannie Mae's guidelines. Wells Fargo knew Plaintiff could not qualify for a permanent loan modification because Wells Fargo had already made the determination that the investor guidelines of Fannie Mae would not permit a modification based on Plaintiff's financial situation. *See* Quigley Decl., Ex A. As a result, it was misleading to send Plaintiff a letter that she should start sending in trial payments, because Wells Fargo already knew a permanent modification could not be offered. Wells Fargo knew that inviting Plaintiff to participate in a trial modification would only put her on a path to foreclosure.

Entries in the call log also provide evidence that Wells Fargo knew that Plaintiff would not be qualified for a permanent modification. On 9/16/2009 the call log reflects the following entry "HMP-OPTS EXHAUSTED." Quigley Decl., Ex. E, p. 43. This entry was recorded six days *before* Plaintiff was sent the letter inviting her to participate in the trial plan. This entry is evidence that Wells Fargo knew Plaintiff did not qualify for a permanent modification *before* it invited her to participate in a trial modification. If HAMP options had been exhausted, Plaintiff's participation in a trial modification was an exercise in futility.

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 20

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

Moreover, Plaintiff has presented evidence that Wells Fargo knew that Plaintiff did not pass the net present value ("NPV") test[3] ***before*** it invited her to participate in the trial modification. On 9/16/2009 the call log reflects "HMP FAIL NEG. NPV." Quigley Decl., Ex. E, p. 43. As Wells Fargo explained to Plaintiff in a letter dated May 4, 2011:

> The net present value calculation requires WFHM to input certain financial information including but not limited to your income and loan information. In order to modify a loan under HAMP, the net present value must produce a positive result. ***If the net present value is negative, WFHM is unable to modify the loan under HAMP.***

Quigley Decl., Ex. D, p. 2 (emphasis added). If Wells Fargo determined that Plaintiff had a negative NPV on 9/16/2009, then Wells Fargo knew it was unable to modify Plaintiff's loan under HAMP. Nonetheless, Wells Fargo invited Plaintiff to participate in a trial modification plan, knowing that this trial modification could never be converted to a permanent HAMP modification. The call log illustrates Plaintiff failed the NPV again on 10/7/2009 and 10/12/2009. *Id.*, Ex. E, p. 43. Despite this, the call log reflects that a Wells Fargo employee instructed Plaintiff to continue making trial payments on 11/2/2009. *Id.*, Ex. E, p. 43.

As discussed above, Plaintiff has offered sufficient evidence to demonstrate the existence of a genuine dispute, and that Wells Fargo failed to operate with "faithfulness to an agreed common purpose" (i.e., a thoughtful and professional review of Plaintiff's request for a loan modification). Plaintiff has presented evidence that Wells Fargo informed her that she may be eligible for a trial modification when it had already determined that she was ineligible for a permanent modification; this certainly constitutes providing her with inaccurate and misleading information about the HAMP Program.

---

[3] The net present value assessment is used to determine whether "a modified mortgage would produce a greater return to the servicer than the unmodified mortgage." *Gaudin v. Saxon Mortgage Services, Inc.*, 297 F.R.D. 417, 421 (2013).

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 21

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax: (206) 299-9337

**d. Plaintiff has submitted sufficient evidence of her claim for outrage.**

As discussed above, Plaintiff has presented evidence that Wells Fargo knew that she was not eligible for a HAMP modification before it invited her to participate in the trial modification.  Wells Fargo stated in a letter to Plaintiff that: "If the net present value is negative, WFHM is unable to modify the loan under HAMP."  Quigley Decl., Ex. D, p. 2. Nonetheless, the call log reflects that Wells Fargo had determined that Plaintiff had a negative NPV before Wells Fargo invited Plaintiff to participate in a trial modification.  *Id.*, Ex. E, p.43. Luring a homeowner into default with the prospect of a lower mortgage payment, when Wells Fargo had already determined she was not qualified for a modification, can certainly "be regarded as atrocious."  *See Kloepfel v. Bokor*, 149 Wn.2d 192, 196, 66 P.3d 630 (2003). Plaintiff's participation in the trial modification was nothing more than an exercise in futility.

Plaintiff has also presented evidence of recklessness.  A Washington Pattern Instruction defining the culpability sufficient to commit the tort of outrage states that one acts recklessly for purposes of that tort if the actor "is aware that there is a high degree of probability that [his] [her] conduct will cause emotional distress and proceeds in deliberate disregard of it." 16 Wash. Prac., Tort Law And Practice § 2:39.50 (4th ed.) (citing WPI 14.03.03).  Thus, "recklessness may be found when the defendant is subjectively aware of a high probability that harm will result, followed by a deliberate choice to take such a risk."  *Id*.  Wells Fargo's conduct meets this definition of reckless.  Wells Fargo had already determined that Plaintiff was not eligible for HAMP because of her negative NPV.  There is a high probability that encouraging a homeowner to default on her mortgage would cause severe emotional distress in this context. Making payments that are less than what is due under the terms of the note, when no permanent modification can be offered, does nothing except put the homeowner on the path to foreclosure.

Case No.: 3:14-cv-05234-BHS
PLAINTIFF'S OPPPOSITION TO WELLS
FARGO AND FANNIE MAE'S MOTION TO
DISMISS AND/OR MOTION FOR
SUMMARY JUDGMENT - 22

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

520 East Denny Way
Seattle, WA 98122
Tele: (206) 805-0989
Fax:  (206) 299-9337

Finally, Plaintiff has evidence of her severe emotional distress.  The *Kloepfel* court noted that emotional distress includes "'all highly unpleasant mental reactions, such as fright, sorrow, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.'" 149 Wash.2d at 203 (quoting Restatement (Second) of Torts § 46, cmt. j).  Severe emotional distress is such "that no reasonable man could be expected to endure it." *Id.*  Here, Plaintiff has lived in constant fear of losing her home for years.  Estes Decl., ¶ 18.  Her fear was exacerbated because her home had been specifically outfitted for her severely disabled husband. *Id.* ¶¶ 2, 18.  Plaintiff felt that if she lost her home, she would be forced to put her husband in a nursing home and that they would be separated.  *Id.* ¶ 18.  As Plaintiff's declaration details, the fear of losing the home and having to live apart from her husband, to whom she was married to for 45 years, resulted in extreme emotional distress.  *See* Estes Decl., ¶¶ 18-21.

### 3. Defendants' request for summary judgment on Plaintiff's CPA claim is premature because outstanding discovery, served before this motion was filed, seeks evidence relating to the public interest element of Plaintiff's CPA claim.

Plaintiff has filed a Rule 56(d) motion for continuance of defendants' motion for summary judgment (Dkt. 27).  For the reasons set forth in Plaintiff's Rule 56(d) motion, Plaintiff requests that the Court decline to rule on Defendants' motion for summary judgment on Plaintiff's CPA claim until she has had an opportunity to engage in discovery on this issue.

Although Plaintiff needs the outstanding discovery to provide evidence of the public interest element of her CPA claim, Plaintiff currently has evidence of injury.[4]  Plaintiff has presented evidence that she lost equity when Wells Fargo lured her into default on her

---

[4] Defendants' argue that: "Plaintiff lacks evidence of a cognizable injury.  Because Plaintiff lacks evidence as to each required element of her claim, summary judgment is appropriate.  Dkt. 26 at 20.  Here, Defendants have "simply state[d] that there is an absence of evidence with a conclusory statement" and have not met their burden under *Celotex*. *See Abad v. Gen. Nutrition Centers, Inc.*, 2013 WL 4038617, at *4 (C.D. Cal. Mar. 7, 2013).  For this reason the Court should deny Defendants' request for summary judgment at the outset.  *See supra* Part B.1.

NW CONSUMER LAW CENTER
*A Non-Profit Law Firm Advocating for Rights of the Consumer*

1    mortgage.  Plaintiff's declaration states that she had approximately $134,000 in equity in

2    September 2009.  *See* Estes Decl., ¶¶ 10-11 (a value of $533,000.00 – liens totaling

3    $398,451.93).  As of June 2013, when Plaintiff received a Notice of Default, she owed Wells

4    Fargo $334,756,98 and she owed approximately $112,291.00 on her HELOC.  Quigley Decl.,

5    Ex. G, p. 3 and Ex. H (credit report from 2013 showing the amount owed on the HELOC).  The

6    Clark County Assessor determined Plaintiff's property value to be $389,603.00 in 2013.  *Id.*,

7    Ex. H.  Based upon this value and the amount of the liens against the property, Plaintiff was

8    severely underwater on the property in June 2013.  Had Plaintiff not been lured into default on

9    her mortgage, she would not have lost such a staggering amount of equity in her property.

10       Plaintiff also has evidence of the first element of the CPA.  A plaintiff can show that an

11   act is unfair under the CPA if it is "unethical, oppressive, or unscrupulous."  *See Klem*, 176

12   Wn.2d at 786.  As discussed above, *see supra* Part B.2.c, Plaintiff has outlined evidence that she

13   was lured into default on her mortgage.  She was provided a letter that stated that she "may be

14   eligible" for a modification after Wells Fargo had determined that she was clearly not eligible

15   for a HAMP modification.  This is sufficient evidence to show that Wells Fargo's actions were

16   unscrupulous (i.e., not honest or fair), and thus, constitute unfair practices under the CPA.

### IV. Conclusion

17       For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

18   motion to dismiss and/or motion for summary judgment in its entirety,[5] or in the alternative

19   grant leave to amend.

20       DATED this 17th day of November, 2014.

/s/ Nathan A. Quigley

Nathan A. Quigley – WSBA # 45403
Attorney for Plaintiff

---

[5] As discussed above, *see supra* Part A.5, Plaintiff will not oppose the dismissal of her claim for negligent
misrepresentation.



**Certificate of Service**

I hereby certify that on the date given below, I electronically filed the foregoing

OPPOSITION TO WELLS FARO AND FANNIE MAE'S MOTION TO DISMISS AND/OR

MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system

which will send electronic notification of such filing to the following persons:

Molly J. Henry
Robert J. Bocko
Keesal, Young & Logan
1301 Fifth Avenue, Suite 3300
Seattle, WA 98101
Attorneys for Defendants Wells Fargo and Federal Nation Mortgage Association
Emails:         Molly.Henry@KYL.com
                Robert.Bocko@KYL.com

    And served a copy upon the following persons(s) via First Class U.S. mail, postage

prepaid:

Charles E. Katz
Northwest Trustee Services, Inc.
1241 East Dyer Road, Suite 250
Santa Ana, CA 92705
Attorney for Defendant Northwest Trustee Services. Inc.

    DATED this 17$^h$ day of November, 2014, at Seattle, Washington.

                                        /s/ Marcia Gay
                                        Marcia Gay
                                        Paralegal
                                        Northwest Consumer Law Center

