1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

PAULETTE M. ESTES,

                Plaintiff,

v.

WELLS FARGO HOME MORTGAGE, et al.,

                Defendants.

CASE NO. C14-5234 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS AND/OR FOR
SUMMARY JUDGMENT

13

14

15

16

17

18

19

20

      This matter comes before the Court on Defendants Federal National Mortgage Association ("Fannie Mae") and Wells Fargo Home Mortgage ("Wells Fargo") (collectively "Defendants") Fed. R. Civ. P. 12(b)(6) and/or 56(a) motion for an order dismissing claims with prejudice and/or granting summary judgment (Dkt. 26).  The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

21

22

# I. PROCEDURAL HISTORY

On February 18, 2014, Plaintiff Paulette Estes ("Estes") filed a complaint in Clark County Superior Court against Defendants.  Dkt. 1, Ex. A at 4–18.  Estes alleged (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) violation of Washington's Consumer Protection Act ("CPA"), (4) misrepresentation, (5) intentional infliction of emotional distress, and (6) promissory estoppel.  *Id.*

On March 19, 2014, Defendants removed the matter to this Court.  Dkt. 1.

On May 5, 2014, Defendants filed a similar motion seeking dismissal of all Estes's claims.  Dkt. 13.  On August 20, 2014, the Court granted the motion in part and denied it in part and granted Estes leave to file an amended complaint.  Dkt. 23.  On August 29, 2014, Estes filed an amended complaint asserting causes of action for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) violation of the CPA, (4) negligent misrepresentation, (5) outrage, and (6) promissory estoppel.  Dkt. 25 ("Comp.").

On October 29, 2014, Defendants filed the instant motion.  Dkt. 26.  On December 15, 2014, Estes responded.  Dkt. 38.  On January 2, 2015, Defendants replied.  Dkt. 44.

# II. FACTUAL BACKGROUND

On December 20, 2002, Estes and her husband obtained a home loan, secured by a deed of trust on the property in question.  Comp. ¶ 3.2.  Soon after the home loan's inception, Fannie Mae became the owner of the loan and Wells Fargo began servicing the loan.  *Id.* ¶¶ 3.3, 3.4.

In December 2008, Estes contacted Wells Fargo to discuss options for lowering her mortgage payment. *Id.* ¶ 3.8.  Over the next few months, Estes alleges that she sent the requested financial information to Wells Fargo to be considered for a loan modification. *Id.* ¶ 3.9.  According to Estes, she received a September 22, 2009 letter from Wells Fargo, which stated:

> Based on our recent conversation about your current mortgage payment issues, we've gone back and carefully reviewed your situation and the information you provided.  That's why we're writing you today—to let you know the results of our review.  You may be eligible for a trial modification plan under the government's Home Affordable Modification Program, and we estimate your new payment amount to be $1,167.

*Id.* ¶ 3.10.  Estes states that the letter explained step-by-step how to proceed with the modification process:

> (1) You must call us to finalize this offer by October 6, 2009 so that we can establish your trial modification plan; (2) During the phone call, we'll schedule a date for your first trial payment using our free Wells Fargo Easy Pay automatic payment service . . . . (3) You will need to make two additional payments at your modified amount using Wells Fargo Easy Pay over the following sixty days; (4) Within a week of setting up your trial payments, we will send you a package of information that clearly spells out the full terms and documentation you need to supply.

*Id.* ¶ 3.11. The letter closed with the following statement:

> Don't let this opportunity to lower your monthly mortgage payments through the Home Affordable Modification Program pass you by.  Call us right away to schedule your required trial period payment, and you are in the program.  It's that easy.

*Id.* ¶ 3.12.

Estes alleges that she never received the promised packet of information that clearly spells out the full terms and documents she would need to supply.  *Id.* ¶ 3.13.

1    Estes further alleges that on October 2, 2009, she scheduled her three trial payments with

2    Wells Fargo to be made on October 10, November 10, and December 10, 2009.  *Id.*

3    ¶ 3.14.  According to Estes, during a call with Wells Fargo representative, Monica, the

4    bank requested no further documentation from Estes.  *Id.*  Before accepting the trial

5    modification offer, Estes alleges that she was current on her mortgage with the unpaid

6    principal balance at approximately $283,360.20.  *Id.* ¶ 3.15.

7         According to Estes, after she made the first payment on the trial plan, she received

8    a letter stating she and her husband were in default on their mortgage.  *Id.* ¶ 3.16.  Estes

9    alleges that she called and spoke to a Wells Fargo representative, Melissa, who explained

10   that Estes was technically late on her loan payment per the original note; however,

11   Melissa also indicated that Estes was in the home loan modification program and

12   working under a different payment plan.  *Id.*  Melissa instructed Estes to continue to

13   make the trial payments.  *Id.*  No further documents were requested from Estes at that

14   time.  *Id.*  Estes alleges that she continued to make monthly trial payments at the

15   modified rate for fifty months.  *Id.* ¶ 3.17.

16        Estes alleges that she continued to call Wells Fargo to check on the status of her

17   modification.  She alleges that on January 6, 2010 she contacted Wells Fargo and was

18   instructed by them to send updated financial information by fax; she did so that same day.

19   *Id.* ¶ 3.18.  On March 10, 2010, Estes alleges that she received a letter from the bank

20   stating:

21        Unfortunately, after carefully reviewing the information you've provided,
          we are unable to adjust the terms of your mortgage.  We can only process
22        your request for payment assistance if we have additional information

1   from you.  We have been unable to reach you to discuss your situation.
2   For that reason, you have not been approved for assistance with your
    current payment challenges.

3   *Id.* ¶ 3.19.  On March 11, 2010, Estes alleges that she phoned Wells Fargo and spoke

4   with a representative, Diane, who instructed her to re-fax all her financial documents,

5   which Estes did that same day.  *Id.* ¶ 3.20.  According to Estes, on March 17, 2010, she

6   received a loan modification starter kit sent by mail from Wells Fargo, which contained

7   forms that she completed, including updates regarding her financial information.  *Id.*

8   ¶ 3.21.  Estes alleges she sent her completed application on April 3, 2010.  *Id.*

9       On August 13, 2010, Estes alleges that she received a letter which stated:

10      Unfortunately, after carefully reviewing the information you've provided,
        we are unable to adjust the terms of your mortgage.  You have not been
11      approved for a mortgage loan modification because we were unable to get
        you a modified payment amount that you could afford per the investor
12      guidelines on your mortgage.

13  *Id.* ¶ 3.22.  According to Estes, throughout 2010 and 2011, she continued to submit

14  documentation to the bank in an attempt to have her loan permanently modified.  *Id.*

15  ¶ 3.23.  However, in early 2011, Estes alleges that she received a notice of default from

16  Northwest Trustee Services ("Northwest").  *Id.*  Nonetheless, she continued to make

17  payments to Wells Fargo at the modified trial payment amount.  *Id.*  Estes alleges that

18  Wells Fargo returned her January, February, and March 2011 payments, although it

19  accepted subsequent payments.  *Id.*

20      Additionally, in early 2011, Estes alleges that she filed a complaint with the Office

21  of the Comptroller of the Currency regarding another attempt to have Wells Fargo

22  permanently modify her loan.  *Id.* ¶ 3.24.  Estes alleges she was connected to Kelly

Crippen ("Crippen") at Wells Fargo, who promised that if Estes eliminated the $465

payment for her handicapped accessible van, the bank would offer her a loan

modification.  *Id.*  Estes alleges she spoke with her siblings about taking over payments

on the van.  *Id.*  According to Estes, Crippen instructed her to fax over documentation

that the van payments would be paid by her siblings; she did so in June 2011.  *Id.*  In July

2011, another Wells Fargo representative phoned Estes to inform her that eliminating the

van payments from her monthly expenses would not fix the problem, and the bank would

not modify her loan.  *Id.*

Estes alleges that she received a letter from Wells Fargo dated October 30, 2012

again denying her request for mortgage assistance.  *Id.* ¶ 3.25.  According to Estes, the

letter stated:

> We carefully reviewed the information you provided and explored a
> number of mortgage assistance options.  At this time, we have determined
> that you do not meet the investor requirements of the program because:
> You have exceeded the number of modifications allowed by the investor.

*Id.*

On or about June 24, 2013, Estes received a notice of default from

Northwest, indicating a past due amount of $73,935.69.  *Id.* ¶ 3.26.  According to

Estes, she made the modified payment on her loan since October 2009 with the

only exception being her withholding of a November 2012 payment at the

instruction of a "HUD housing counselor" following an unsuccessful foreclosure

mediation with Wells Fargo.  *Id.*  In October 2013, Wells Fargo returned Estes's

$1,167 trial payment.  *Id.*

1    Finally, Estes alleges that "[a]ll the allegations in this Complaint occurred while

2    Defendant Wells Fargo was acting as an agent for Defendant Fannie Mae." *Id.* ¶ 3.28.

3                                      **III. DISCUSSION**

4    **A.    Motion to Dismiss**

5    Defendants move to dismiss all of Estes's claims.  Dkt. 26 at 1.

6         **1.      Standard**

7    Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil

8    Procedure may be based on either the lack of a cognizable legal theory or the absence of

9    sufficient facts alleged under such a theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d

10   696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is

11   construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir.

12   1983).  To survive a motion to dismiss, the complaint does not require detailed factual

13   allegations but must provide the grounds for entitlement to relief and not merely a

14   "formulaic recitation" of the elements of a cause of action.  *Bell Atlantic Corp. v.*

15   *Twombly,* 127 S. Ct. 1955, 1965 (2007).  Plaintiffs must allege "enough facts to state a

16   claim to relief that is plausible on its face."  *Id.* at 1974.

17        **2.      Breach of Contract**

18   A contract requires offer, acceptance and consideration.  *See Yakima Cnty. Fire*

19   *Prot. Dist. No. 12 (West Valley) v. Yakima*, 122 Wn.2d 371, 389–90 (1993).  A breach of

20   contract is actionable if "the contract imposes a duty, the duty is breached, and the breach

21   proximately causes damage to the claimant."  *Nw. Indep. Forest Mfrs. v. Dep't of Labor*

22   *& Indus.*, 78 Wn. App. 707, 712 (1995).  In the special context of a trial payment plan

("TPP") under the Home Affordable Modification Program ("HAMP"), where "borrowers allege . . . that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 884 (9th Cir. 2013). "If a borrower does not qualify for the HAMP program, the servicer must not only alert the borrower, but must consider alternatives." *Id.* at 881.

In this case, Defendants argue that Estes has failed to state a breach of contract claim because she is attempting "to convert a preliminary solicitation for a TPP into a binding TPP." Dkt. 44 at 3. Defendants contend that the "September 2009 letter was nothing more than a solicitation to negotiate a potential modification." Dkt. 26 at 5. It is unclear exactly what Defendants are arguing. Estes alleges that there was an offer (Comp. ¶ 4.2) and an acceptance (*Id.* ¶ 4.3). Therefore, to the extent that Estes must allege sufficient facts to under a cognizable legal theory, she has done so. Accordingly, the Court denies Defendants' motion to dismiss Estes's breach of contract claim. This conclusion also results in the Court denying Defendants' motion on Estes's good faith and fair dealing claim. *See* Dkt. 44 at 4.

### 3.   CPA

Defendants argue that they are exempt from the CPA or, in the alternative, Estes fails to sufficiently allege a CPA claim. Dkt. 26 at 6–12.

#### a.   Exemption

RCW 19.86.170 exempts actions and transactions that are "otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or

1  officer acting under statutory authority of . . . the United States."  However, this statute

2  "does not exempt actions or transactions merely because they are regulated generally; the

3  exemption applies only if the particular practice found to be unfair or deceptive is

4  specifically permitted, prohibited, or regulated."  *Miller v. U.S. Bank of Wash., N.A.*, 72

5  Wn. App. 416, 420 (1994) (citing *Vogt v. Seattle-First Nat'l Bank*, 117 Wn.2d 541, 552

6  (1991)).

7        In this case, Defendants argue they are exempt because federal regulations exist to

8  prohibit the unfair and deceptive acts Estes alleges in her complaint.  Initially,

9  Defendants argued that "[f]ederal regulations are in place to specifically regulate unfair

10 or deceptive acts or practices."  Dkt. 26 at 8 (citing 15 U.S.C. § 57a).  Estes responded

11 that this was a general regulation of unfair and deceptive acts and "Defendants fail to cite

12 to federal regulations ***specifically*** regulating a servicer's of luring customers into

13 default . . . ."  Dkt. 38 at 11.  The Court agrees with Estes on this point.  Defendants,

14 however, cite to 12 C.F.R. § 1015.3(b) in their reply, a statute that specifically regulates

15 misrepresentations by "mortgage assistance relief service provider[s]."  Dkt. 44 at 4.

16 While this regulation appears to be a specific regulation, it is a violation of due process to

17 include new arguments in a reply brief because Estes does not have an opportunity to

18 respond.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).  Therefore, as to

19 this round of briefing, the Court denies Defendants' motion on the issue of exemption.

20                    **b.      State a Claim**

21        In order to support a claim for violation of the CPA, a plaintiff must allege: (1) an

22 unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts

the public interest; (4) causes injury to the Plaintiff's business or property; and (5) the injury is causally linked to the unfair or deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). An unfair or deceptive practice is one that "has the capacity to deceive a substantial portion of the public." *Id.* at 785. Failure to satisfy even one element is fatal to a CPA claim. *Id.* at 793.

In this case, Defendants argue that Estes has failed to allege sufficient facts on all elements of her CPA claim. Dkt. 26 at 8–12. First, Estes has sufficiently alleged that the acts in question have the capacity to deceive a substantial portion of the public. Wells Fargo services thousands of Washington customers and the form solicitation at least has the capacity to deceive any of the Washington customers.

Second, Estes has sufficiently alleged that the conduct impacts the public interest. Estes asserts that if the letter was sent to other Washington customers, then there exists a likelihood that those customers were injured by accepting the offer in the letter. On a motion to dismiss, the Court must accept this allegation as true.

Third, Estes has alleged sufficient injury because she alleges that she "lost money." Comp. ¶ 4.19. Therefore, the Court denies Defendants' motion on Estes's CPA claim.

### 4.    Outrage

The elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Kirby v. City of Tacoma*, 124 Wn. App. 454, 473 (2004).

1    In this case, Defendants argue that Estes has failed to allege extreme and

2    outrageous conduct.  Dkt. 26 at 14–15.  Estes, however, has alleged that Defendants

3    induced her to make lower payments on her loan, effectively resulting in defaulting on

4    her loan, and then proceeded to foreclose on her property.  The Court finds that these

5    allegations plausibly state a claim for extreme and outrageous conduct.  *See, e.g.*,

6    *Montgomery v. SOMA Fin. Corp.*, No. C13-360, 2014 WL 2048183, at *7 (W.D. Wash.

7    May 19, 2014) ("[T]he allegation that [the bank] induced the Montgomerys to default and

8    then attempted to foreclose on the property plausibly alleges extreme or outrageous

9    conduct.").  Therefore, the Court denies Defendants' motion on Estes's outrage claim.

10   **5.     Negligent Misrepresentation**

11   Defendants moved to dismiss Estes's claim for negligent misrepresentation.  Dkt.

12   26 at 12.  Estes conceded this claim.  Dkt. 38 at 13.  Therefore, the Court grants

13   Defendants' motion on this claim.

14   **6.     Fannie Mae**

15   In this case, the Court granted Fannie Mae's first motion to dismiss because Estes

16   failed to make any allegation that Fannie Mae was acting as Wells Fargo's principle.

17   Dkt. 23 at 12–13.  In the Amended Complaint, Estes alleges "[a]ll the allegations in this

18   Complaint occurred while Defendant Wells Fargo was acting as an agent for Defendant

19   Fannie Mae."  Comp. ¶ 3.28.  In the instant motion, Defendants argue that this allegation

20   is nothing more than a mere label and conclusion.  Dkt. 26 at 4.  The Court agrees.

21   Therefore, the Court grants Defendants' motion to dismiss Fannie Mae.  Moreover, the

22   Court denies Estes leave to amend.  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809

1   (9th Cir. 1988) (district court did not abuse its discretion by refusing to allow a second

2   amended complaint where the first amendment had failed to cure deficiencies).

3   **B.      Motion for Summary Judgment**

4          Defendants move for summary judgment on all of Estes's remaining claims.  Dkt.

5   26 at 15.

6          **1.      Standard**

7          Summary judgment is proper only if the pleadings, the discovery and disclosure

8   materials on file, and any affidavits show that there is no genuine issue as to any material

9   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

10  The moving party is entitled to judgment as a matter of law when the nonmoving party

11  fails to make a sufficient showing on an essential element of a claim in the case on which

12  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

13  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

14  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

15  *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must

16  present specific, significant probative evidence, not simply "some metaphysical doubt").

17  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

18  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

19  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477

20  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

21  626, 630 (9th Cir. 1987).

22

1       The determination of the existence of a material fact is often a close question. The

2 Court must consider the substantive evidentiary burden that the nonmoving party must

3 meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

4 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

5 issues of controversy in favor of the nonmoving party only when the facts specifically

6 attested by that party contradict facts specifically attested by the moving party. The

7 nonmoving party may not merely state that it will discredit the moving party's evidence

8 at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

9 *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

10 nonspecific statements in affidavits are not sufficient, and missing facts will not be

11 presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

12     **2.**     **Defendants' Burden**

13       In her response, Estes argues that the Court should deny Defendants' motion

14 because they have failed to meet their burden of production. In the Ninth Circuit,

15 however, "the moving party need only point out 'that there is an absence of evidence to

16 support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

17 Cir. 2001) (citing *Celotex*, 477 U.S. at 325). This is exactly what Defendants are arguing.

18 For example, Defendants argue that Estes lacks evidence of any consideration to support

19 the alleged contract. Dkt. 44 at 10. Therefore, the Court will consider the merits of

20 Defendants' motion.

21

22

ORDER - 13

1     **3.**      **Breach of Contract**

2     A contract requires offer, acceptance, and consideration. *See Yakima Cnty.*, 122

3 Wn.2d at 389–90. Consideration is a bargained-for exchange of promises. *Williams*

4 *Fruit Co. v. Hanover Ins. Co.*, 3 Wn. App. 276, 281 (1970). "Independent, additional,

5 consideration is required for the valid formation of a modification or subsequent

6 agreement." *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834 (2004). "Independent

7 consideration involves new promises or obligations previously not required of the

8 parties." *Id.*

9     In this case, Defendants argue that Estes has failed to produce evidence of

10 consideration for the alleged contract. Dkt. 26 at 17–18. Estes responds with a variety of

11 things that she was required to do pursuant to the alleged contract. Dkt. 38 at 19. Estes,

12 however, fails to direct the Court's attention to evidence of any additional obligation that

13 Wells Fargo was required to do. This is fatal to her contract claim. There was no

14 *exchange* of promises, only potential benefits for Estes if she was accepted for a loan

15 modification. Therefore, the Court grants Defendants' motion for summary judgment on

16 Estes's contract claim. Accordingly, Estes's claim for breach of good faith and fair

17 dealing falls with the contract claim.

18     **4.**      **CPA**

19     Defendants argue that Estes has failed to submit evidence supporting all elements

20 of her CPA claim. The Court agrees. First, Estes fails to submit evidence showing that

21 Wells Fargo's conduct has the capacity to injure other Washington consumers. Estes

22 relies on a law review article noting the nationwide complaint with HAMP and statistics

1    from the Washington Department of Commerce.  This evidence, however, does not show

2    that Wells Fargo's letter deceived any other Washington consumer.  While Defendants do

3    not cite a case that requires actual evidence of a similar deception, Estes's theory is very

4    factually specific to Estes and Estes must produce some evidence to create a question of

5    fact to submit to the jury.  Based on the current record, Estes has only established a

6    hypothetical capacity to impact the public with the alleged unfair and deceptive acts.

7          Second, even if Estes met her burden on the public impact element, she failed to

8    meet her burden on the injury element.  To overcome the motion to dismiss, Estes alleged

9    that she "lost money" because of Defendants' actions.  At the summary judgment stage,

10   Estes is required to provide evidence of that loss.  Her only evidence is the loss of a

11   "staggering amount of equity in her property."  Dkt. 38 at 26.  The Court agrees with

12   Defendants that this is not evidence of an actual loss that is casually linked to the alleged

13   unfair and deceptive acts.  Therefore, the Court grants Defendants' motion for summary

14   judgment on Estes's CPA claim.

15   **5.    Outrage**

16         Defendants move for summary judgment on Estes's claim for outrage because

17   Estes has failed to submit evidence of conduct that goes beyond all possible bounds of

18   decency.  Dkt. 44 at 13.  Estes, however, has submitted sufficient evidence to create a

19   question of fact on this claim.  For example, a reasonable juror could find that it is

20   outrageous for Wells Fargo to accept approximately 48 reduced payments only to reject

21   Estes for a modification program and give her 30 days to pay an outstanding balance of

22

1    $76,446.33 or face foreclosure.  Dkt. 40, Ex. F.  Therefore, the Court denies Defendants'

2    motion on Estes's outrage claim.

3         **6.    Promissory Estoppel**

4         Promissory estoppel requires: "(1) A promise which (2) the promisor should

5    reasonably expect to cause the promisee to change his position and (3) which does cause

6    the promisee to change his position (4) justifiably relying upon the promise, in such a

7    manner that (5) injustice can be avoided only by enforcement of the promise."  *Corbit v.*

8    *J.I. Case Co.*, 70 Wn.2d 522, 539 (1967).

9         In this case, Defendants contend that Estes has failed to submit sufficient evidence

10   to support her promissory estoppels claim.  Dkt. 26 at 15–17.  The Court disagrees.

11   There exists sufficient evidence to show that Wells Fargo at least promised that Estes

12   would be accepted for a trial payment period.  During that period, if Estes qualified, then

13   Wells Fargo would offer a loan modification, which was "estimated" at the trial payment

14   amount.  Estes declares that the Wells Fargo representative informed her that she was in

15   the HAMP, she was under a different payment plan, and to continue to make the estimate

16   trial payments.  Estes adjusted her payments accordingly, which Wells Fargo accepted

17   approximately 48 times.  Estes justifiably relied on the acceptance of those payments at

18   least to the extent that she wouldn't be in default for the entire unpaid balance

19   immediately upon being rejected for a modification.  While injustice may not only be

20   avoided by a permanent loan modification at the original estimated payment amount,

21   injustice could possibly be avoided by some offer of modification or, at the very least,

22   agreement to accept the trial payments for the more than the four years that Wells Fargo

1   accepted them.  Therefore, the Court denies Defendants' motion on Estes's promissory

2   estoppel claim.

3   **IV. ORDER**

4       Therefore, it is hereby **ORDERED** that Defendants' Fed. R. Civ. P. 12(b)(6)

5   and/or 56(a) motion for an order dismissing claims with prejudice and/or granting

6   summary judgment (Dkt. 26) is **GRANTED in part** and **DENIED in part** as stated

7   herein.  The Clerk shall terminate Fannie Mae as a party.

8       Dated this 27th day of January, 2015.

9

10

11

            BENJAMIN H. SETTLE
            United States District Judge

12

13

14

15

16

17

18

19

20

21

22